**Affirmed and Opinion filed March 8, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-16-00892-CR

**GAGE MICHAEL SPIERS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1464180**

## O P I N I O N

A jury found appellant Gage Michael Spiers guilty of murdering Nicholas Harley Burke and assessed punishment at thirty-five years' confinement. Appellant challenges his conviction in five issues, contending that (1) the evidence is insufficient to corroborate the accomplice-witness testimony; (2) the evidence is legally insufficient to find appellant guilty; (3) the State knowingly used perjured testimony; (4) the trial court erred by instructing the jury about the law of parties in

the charge; and (5) the trial court erred by failing to hold a hearing on appellant's motion for new trial. We affirm.

## I.   ACCOMPLICE WITNESS

In his first issue, appellant contends that the evidence is insufficient to corroborate the testimony of an accomplice witness, Ernest Horn. Appellant asks this court to render a judgment of acquittal. *See Taylor v. State*, 10 S.W.3d 673, 685 (Tex. Crim. App. 2000).

## A.   Legal Principles

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. art. 38.14. "When reviewing the sufficiency of the non-accomplice evidence under Article 38.14, we decide whether the inculpatory evidence tends to connect the accused to the commission of the offense." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011).

Under this standard, the corroborating evidence need not prove the accused's guilt beyond a reasonable doubt by itself. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). Rather, in determining whether non-accomplice evidence tends to connect a defendant to the offense, "the evidence must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009) (alteration in original) (quoting *Malone*, 253 S.W.3d at 257). There is no set amount of non-accomplice corroboration evidence that is required, and each case must be judged on its own facts. *Malone*, 253 S.W.3d at 257.

To determine if the corroboration evidence is sufficient, we will eliminate the accomplice testimony from consideration and then examine the remaining record to see if there is any evidence that tends to connect the accused with the commission of the crime. *Id.* We review the evidence in the light most favorable to the jury's verdict. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). When there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the jury's resolution. *Smith*, 332 S.W.3d at 442. We may not take a "divide and conquer" approach; we must consider the combined force of all of the non-accomplice evidence. *See id.*

Evidence of the accused's motive and opportunity is insufficient on its own to corroborate accomplice testimony, but motive and opportunity may be considered in connection with other evidence that tends to connect the accused to the crime. *Id.* Evidence that the accused was "at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Id.* at 443 (quotations omitted). Even circumstances that appear insignificant may amount to sufficient evidence of corroboration. *Malone*, 253 S.W.3d at 257.

## B. The Non-Accomplice Evidence

Burke's body was found at about noon on November 20, 2013, in a public park. He had been shot and stabbed multiple times. An autopsy revealed fly eggs in his nose and in a wound, which allowed an entomologist to estimate the time of Burke's death. Based on the lifecycle and typical activities of flies, the entomologist opined that the eggs were laid in the body during daylight hours on November 20 and that Burke was murdered at some time after sundown on

November 19. A security guard who was working near the park on November 19 heard gunshots at 9:10 p.m.

Two .45 caliber shell casings were found at the scene. A firearms examiner testified that the casings could have been fired from a semiautomatic pistol such as a .45 Ruger. One of Burke's friends testified that a day or two before the murder, Burke was trying to sell his Ruger P45 pistol. Burke asked the friend if he or anybody else would want to buy it. The friend did not buy it.

Two days before Burke's body was found, on November 18, Glenn Avary awoke to discover that his truck and toolbox had been stolen. Based on prior experiences with Burke, Avary suspected Burke was the culprit. Avary called Burke, and Burke admitted to the theft. Burke told Avary, "My friend and I came in there, I grabbed the cigarettes, he grabbed the keys and he came back at 2:00 AM, stole the truck and showed up." Burke directed Avary to a location to recover the truck. When Avary got to the truck, he called Burke to ask for the keys. Then, appellant arrived and gave Avary the keys. Appellant said that he was "just a messenger" and "didn't have anything to do with this."

Avary realized his tools and other items were missing from the truck. He met with Burke on the following day, November 19, to attempt to recover some of the items from a pawnshop. Ultimately, a deputy with the Harris County Sheriff's Office obtained a surveillance video recording from the pawnshop. The video showed Burke and appellant together, pawning the tools, on November 18. Burke used his identification card to make the sale and received the money from the pawnshop. Then, Burke gave appellant some of the money.

Around the time of Burke's murder, appellant had been living with his very good friend, Tanner Selldin, and her aunt. Appellant and Selldin were taking care of the aunt because she was sick, and one of them had to be at the house at all

4

times. Selldin testified that appellant, Burke, and Horn used to go skateboarding together.

On the evening of November 19, appellant and Horn were at the house when Selldin returned home. Appellant and Horn had been talking, and Selldin overheard appellant mutter, "I'm not F-ing going to jail for Harley tonight." Appellant then told Selldin, "If [the aunt] asks, I went home to get my clothes and I'll be back in a few hours. Don't worry about anything."

Selldin found the statement about needing clothes odd because appellant had two duffel bags of clothes at the house already. Selldin testified that she and appellant had a lot of clothes at the house already because they were not allowed to leave the house without somebody being there and they wanted to make sure they had enough clothes.

Appellant began rummaging through his bags. Selldin asked him what he was doing, and appellant responded, "Just don't worry about it. I'll be back in a few hours or so." Selldin thought it was suspicious that appellant would not tell her where he was going because they typically told each other where they were going and what they were doing. She gave an example: "If he was going to get a haircut, I knew when he would be back, I knew who he was hanging out with."

Selldin testified that appellant and Horn left the house at about 8:00 p.m. or 8:30 p.m. She testified that appellant was known to drive when appellant and Horn went places.

Selldin texted both appellant and Horn while they were gone, and neither responded to her messages. Selldin testified that appellant always had his phone around him, and he never lent it to anyone for a day or longer.

Police officers obtained cell phone records for appellant, Burke, and Horn. The records showed that there was a lot of contact between Burke and the two suspects, appellant and Horn, throughout the day on November 19. According to the State's exhibits, over the course of November 18 and 19, Burke had called appellant twenty-eight times and appellant had called Burke thirteen times, in addition to text messages.

The last call that Burke received was at 8:43 p.m. on November 19. The call came from appellant's phone. After that call, neither appellant nor Horn ever attempted to call Burke again, and Burke's cell phone stopped registering on any cell towers.

A Harris County Sheriff's Office employee testified that she mapped the locations of appellant's and Burke's cell phones at the time of the final call at 8:43 p.m., based on nearby cell phone towers. At the time of the call, the phones were at the same or similar location. State's Exhibit 85 showed the location to be near Cy Fair High School, which was located less than a mile from the park where Burke's body was discovered the next morning. A surveillance video from the school showed a car similar to appellant's stop and pick up a passenger at about 8:45 p.m. The passenger got into the rear of the car. According to the sheriff's office employee, Horn's cell phone was also near the high school and park at 9:27 p.m.

Selldin testified that appellant and Horn returned to the house at about 11:30 p.m. When they returned, appellant's demeanor had changed. He was quiet and reserved like he was "taking it in." Appellant wanted to be left alone and to be by himself. Selldin thought appellant's behavior was unusual because usually appellant was talkative and would tell Selldin everything that he had done while out.

6

There was a candlelight vigil after the murder. A lot of Burke's friends attended, but appellant did not. Selldin found out about the murder through Facebook about a week afterward. She thought it was strange that appellant never mentioned his friend's death to her. Around the same time, Selldin found out through a clique of friends that appellant had gone to Louisiana.

Later, appellant came back to live at his mother's house in Cypress; he stopped living with Selldin and taking care of her aunt. He became reclusive and was staying home a lot more. He was trying to enlist in the army. When Selldin asked appellant why law enforcement had questioned her about appellant, he said he could not tell her anything. She found his response unusual because they would usually tell each other everything.

Selldin also testified that appellant was known to carry brass knuckles with a knife. She identified an exhibit as a picture of the weapon. As far as she knew, Horn did not carry a knife.

## C.     Analysis

Although insufficient by itself, motive is a significant circumstance indicating guilt and can be the "glue that holds the entire case together." *Hacker v. State*, 389 S.W.3d 860, 870 (Tex. Crim. App. 2013) (quotation omitted). Based on the evidence linking appellant to the theft from Avary and appellant's statement that he was "not F-ing going to jail" for Burke, the jury could have inferred that appellant had a motive for murdering Burke—that appellant was angry at Burke for implicating him in the theft from Avary.

"Evidence that appellant was in the company of the accomplice at or near the time or place of a crime is proper corroborating evidence to support a conviction." *Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997).

7

The jury could have inferred that appellant not only had the opportunity to murder Burke, but also that appellant was with Burke and Horn at the time of the murder—around 9:10 p.m. on November 19—given the following evidence:

- Cell phone location data showed that appellant and Burke were near the location of the murder at 8:43 p.m., and that Horn was near the location of the murder at 9:27 p.m.

- A car similar to appellant's picked up a passenger, who got into the rear of the vehicle, near the location of the murder a few minutes after appellant's and Burke's cell phones were near the same location.

- Selldin testified that appellant and Horn left the house together before the time of the murder and returned together after the murder, and that appellant was known to drive them.

But because motive and opportunity are insufficient on their own to tend to connect appellant to Burke's murder, we turn to additional "circumstances that raise suspicion" tending to connect appellant the murder. *See Smith*, 332 S.W.3d at 444.

"Proof that connects appellant to a weapon similar to that used in the offense is another circumstance to be considered when determining the sufficiency of evidence to corroborate the accomplice." *Hernandez*, 939 S.W.2d at 178 (corroborating evidence included the defendant's showing someone a shotgun a few months before the murder, and the victim had been killed with a shotgun). The jury heard that Burke had been stabbed at about the time he was shot and that appellant was known to carry a knife.

"Evidence of flight and guilty demeanor, coupled with other corroborating circumstances, may tend to connect a defendant with the crime." *Id.* (corroborating evidence included the defendant's leaving town without explanation after the offense). Less than a week after the murder, appellant stopped living with Selldin

8

and went to Louisiana. Although appellant was Selldin's close friend at the time, she found out about his departure through other friends.

A jury may also consider a defendant's untruthful statements—whether "implausible" or "inconsistent"—as affirmative evidence of guilt. *See Gear v. State*, 340 S.W.3d 743, 745, 747–48 (Tex. Crim. App. 2011) (holding that evidence was legally sufficient to prove intent to steal for purposes of attempted burglary when the defendant fled the scene and told police that he had leaned on a window and broke it but later testified that he did not break the window). Here, the jury could have found that appellant's explanation for leaving the house during the time frame of the murder—a need to obtain clothes—was untruthful and implausible because appellant already had two duffel bags of clothes at the house. The jury could have inferred that appellant's lying about his whereabouts at the time of the murder exhibited a consciousness of guilt. *Cf. King v. State*, 29 S.W.3d 556, 564–65 (Tex. Crim. App. 2000) (holding that evidence was legally sufficient for murder in part because some evidence contradicted the defendant's statements in a letter to a newspaper, and the false statements indicated a consciousness of guilt and attempt to cover up the crime).

Finally, a jury may consider the defendant's "strange behavior" after the murder. *Smith*, 332 S.W.3d at 445–46 (considering non-accomplice evidence of a widow referring to herself with her maiden name in a joking manner, not seeming "upset enough," and making "several mean-spirited remarks, couched in a tone of either underlying disdain or inappropriate humor"). Here, the jury heard that appellant was behaving unusually and suspiciously by not telling his good friend, Selldin, about his whereabouts and activities around the time of the murder. And although appellant and Burke had contacted each other a lot in the days preceding the murder, the contact suddenly stopped around the time that Burke was killed.

9

Selldin thought it was unusual that appellant did not tell her that his friend was murdered or that appellant had left the state. She thought his demeanor changed, and he became reclusive.

Though each fact discussed above might not satisfy Article 38.14 individually, the cumulative force of the non-accomplice evidence, giving proper deference to the jury's resolution of the facts, tends to connect appellant to the murder. *See Smith*, 332 S.W.3d at 447.

Appellant's first issue is overruled.

## II.    LEGAL SUFFICIENCY

In his second issue, appellant contends that the evidence is legally insufficient for rational jurors to find him guilty beyond a reasonable doubt. Appellant complains that Horn's testimony was not credible.

But, in a legal sufficiency review, the jury is the "sole judge of the credibility and weight to be attached to witness testimony." *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). Because we will not second-guess the jury's assessment of the credibility and weight of witness testimony, appellant's argument that Horn's testimony was not credible plays no part in our review of the sufficiency of the evidence. *See id.* Rather, "we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 765–66.

Horn testified that Burke had sold appellant a handgun and that appellant was uncharacteristically angry at Burke regarding the Avary theft. Horn testified that he was present when appellant shot and stabbed Burke. Although Horn did not see the actual shooting or stabbing from his vantage point near a wooded creek bed

10

at night, he heard multiple gunshots and then Burke saying "you shot me." Horn saw appellant emerge from the creek bed with the gun. Appellant put the gun in Horn's face and told Horn, "I don't have to worry about you saying nothing, right?" Horn testified that appellant returned to Burke's body with a knife—the same knife Selldin identified—because appellant wanted to make sure Burke was dead. Appellant intended to "finish him." And, Horn testified that he had lied to others, including the police, because he was afraid of being implicated in the murder.

Considering the totality of Horn's testimony, along with the non-accomplice evidence discussed above, the evidence is legally sufficient for a rational jury to find beyond a reasonable doubt that appellant intentionally or knowingly caused the death of Burke, as charged in the indictment. *See* Tex. Penal Code § 19.02(b).[1]

Appellant's second issue is overruled.

### III.  PERJURED TESTIMONY

In his third issue, appellant contends that he was denied due process and a fair trial by the State's knowing use of perjured testimony from the accomplice witness, Horn.[2]

---

[1] The jury was charged on several theories of murder and party liability. When, as here, "the jury returns a general verdict and the evidence is sufficient to support a guilty finding under any of the allegations submitted, the verdict will be upheld." *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992).

[2] The parties do not address error preservation. We assume without deciding that the right to due process and a fair trial untainted by false testimony is not forfeited by the failure to object at trial. *See Ex parte Napper*, 322 S.W.3d 202, 241 (Tex. Crim. App. 2010) (addressing the merits of a perjured-testimony claim without expressing an opinion on preservation of error even though there was "at least a question regarding whether applicant has forfeited his complaint" by failing to make the complaint at trial). *But see Donaldson v. State*, No. 01-11-00366-CR, 2013 WL 816215, at *4–5 (Tex. App.—Houston [1st Dist.] Mar. 5, 2013, no pet.) (mem. op., not designated for publication) (defendant failed to preserve this type of error by not making a timely complaint in the trial court); *Guerrero v. State*, No. 13-05-00709-CR, 2008 WL 5179740, at *9–

The Due Process Clause of the Fourteenth Amendment may be violated if the State uses false testimony to obtain a conviction, regardless of whether the State does so knowingly or unknowingly. *Ex parte Chavez*, 371 S.W.3d 200, 207–08 (Tex. Crim. App. 2012). "Testimony need not be perjured to constitute a due-process violation; rather, it is sufficient that the testimony was false." *Id.* at 208 (quotations omitted). "The question is whether the testimony, taken as a whole, gives the jury a false impression." *Id.* The defendant bears the burden of showing that the testimony used by the State was false. *See Losada v. State*, 721 S.W.2d 305, 311 (Tex. Crim. App. 1986).

Appellant has not met this burden. Appellant points to no evidence other than Horn's own testimony from this trial and the fact that the State continued to pursue murder charges against Horn. Appellant contends, "The very fact that the State maintained a murder charge against [Horn], while repeatedly eliciting his testimonial claims of innocence, proves this point definitively." Although appellant focuses on the prosecutor's subjective belief concerning the testimony, the State's intent is "not relevant to false-testimony due-process error analysis." *Ex parte Chavez*, 371 S.W.3d at 208.[3]

Appellant cites to no analogous cases to support the proposition that Horn's testimony was "false" under these circumstances, and he cites to no evidence demonstrating the falsity of Horn's testimony. Courts have required more than a prosecutor's mere suspicion or personal disbelief of a portion of the accomplice's testimony. *See Green v. State*, 839 S.W.2d 935, 944–46 (Tex. App.—Waco 1992,

---

10 (Tex. App.—Corpus Christi Mar. 13, 2008, no pet.) (mem. op., not designated for publication) (same).

[3] However, whether the State's use of the false testimony was knowing or unknowing "may impact the applicable standard of materiality." *Ex parte Robbins*, 360 S.W.3d 446, 460 (Tex. Crim. App. 2011).

pet. ref'd) (reasoning that the accomplice's testimony was not perjured although the prosecutor admitted at a hearing on the motion for new trial that he believed the accomplice witness had lied about whether the defendant knew the victim would be robbed). Whether an accomplice has testified truthfully is generally for the jury to determine, not the prosecutor. *Id.* at 946 (reasoning that the prosecutor's "personal hindsight opinion of [the accomplice's] credibility did not make his testimony inadmissible").

To demonstrate falsity, courts have required at least some evidence that contradicts the impression of the witness's testimony. *See, e.g.*, *Ex parte Chavez*, 371 S.W.3d at 208 (holding that the testimony of two eyewitnesses was false when they identified the defendant as the shooter but another person later confessed to being the shooter); *Ex parte Ghahremani*, 332 S.W.3d 470, 479 (Tex. Crim. App. 2011) (upholding trial court's finding that the testimony of a sexual assault victim's parents was false when their testimony omitted significant events after the assault and attributed the child's psychological treatment to harm done by the defendant; but new evidence showed that the child had also been in an intimate relationship with another adult, was selling drugs, was initiated into a gang, and had been sexually assaulted by another person); *Ex parte Chabot*, 300 S.W.3d 768, 772 (Tex. Crim. App. 2009) (upholding trial court's finding that the accomplice's testimony was false when he testified that the defendant sexually assaulted the murder victim, but post-conviction DNA testing conclusively linked the accomplice to the sexual assault and refuted the accomplice's testimony); *Duggan v. State*, 778 S.W.2d 465, 468 (Tex. Crim. App. 1989) (holding that the testimony of accomplice witnesses was false when they made firm, sweeping assertions that no agreements existed for leniency in exchange for testimony, but the prosecutor

admitted post-trial that he told the accomplices he would consider leniency in exchange for testimony).

Appellant has not shown that Horn's testimony was false. His third issue is overruled.

## IV.  JURY CHARGE

In his fourth issue, appellant contends that he suffered some harm from the inclusion of a law-of-parties instruction in the jury charge. Assuming without deciding that the jury charge erroneously authorized appellant's conviction under the parties instruction, appellant has not suffered some actual harm from the error.

The trial court instructed the jury on the law of parties consistent with the statutory language. *See* Tex. Penal Code §§ 7.01, 7.02. Under the charge, the jury was authorized to convict appellant if it believed appellant was a party to the offense committed by Horn. Appellant objected, and the trial court overruled the objection.

When an appellant objects to an erroneous jury instruction, the record must show that the appellant suffered some harm to reverse the conviction. *See Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). The "some harm" standard requires error that is calculated to injure the rights of the defendant. *Id.* (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). There must be some actual, rather than merely theoretical, harm from the error. *Id.* (quoting *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008)). In making this determination, we must consider "(1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record." *Id.*

A trial court errs by submitting a parties instruction if the evidence adduced at trial would not support a jury verdict under the law of parties. *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999). However, if the evidence "clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless." *Id.* at 564–65 (quoting *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986)). An appellant is not harmed by the inclusion of a parties instruction if the jury "almost certainly did not rely upon the parties instruction in arriving at its verdict, but rather based the verdict on the evidence tending to show appellant's guilt as a principal actor." *Id.* at 565. If guilt as a party would be "an irrational finding under the evidence, then it is highly unlikely that a rational jury would base its verdict on a parties theory." *Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999).

Although the jury charge as a whole weighs in favor of finding harm, nothing else in the record supports a finding of harm. No evidence pointed toward Horn, as opposed to appellant, as the primary actor. Horn's testimony, coupled with other circumstantial evidence tending to connect appellant to the murder, pointed only to appellant as the primary actor. In closing argument, the State did not encourage the jury to rely on the parties instruction, nor did the State even mention it. Rather, the State told the jury that Horn was telling the truth and, "It's not possible that it happened any other way."

Under these circumstances, appellant has not suffered some actual, rather than merely theoretical, harm. *See id.* (no harm from charging jury on guilt as a party when the accomplice witness testified that the defendant shot the complainant, and there was non-accomplice testimony tending to connect the defendant to the offense, such as his possession of the murder weapon); *cf. Payne v. State*, 194 S.W.3d 689, 698–99 (Tex. App.—Houston [14th Dist.] 2006, pet.

15

ref'd) (no harm from charging jury on guilt as a principal when the evidence clearly supported guilt as a party and the State did not encourage the jury to rely on the principal theory of guilt during closing argument).

Appellant's fourth issue is overruled.

## V.    MOTION FOR NEW TRIAL

In his fifth issue, appellant contends that the trial court erred by not holding a hearing on his motion for new trial based on newly discovered evidence. Appellant has not preserved error.

"[A]s a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a specific and timely request, objection, or motion." *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006); *see also* Tex. R. App. P. 33.1(a). Generally, a complaint is "adequately specific if the party lets the trial judge know what he wants and *why* he is entitled to it." *Gillenwaters*, 205 S.W.3d at 537 (emphasis added). Providing the trial court with one rationale for the requested action will not preserve an appellate complaint based on another rationale. *See id.* at 537–38 (motion for new trial preserved a complaint that a statute was unconstitutionally vague as applied but did not preserve the complaint alleged on appeal that the statute was unconstitutionally overbroad as applied); *see also Penton v. State*, 489 S.W.3d 578, 580 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) ("The appellate complaint must comport with the specific complaint that appellant timely lodged in the trial court. . . . The complaining party must have conveyed to the trial court the particular complaint raised on appeal, including the precise and proper application of law as well as underlying rationale."). One of the purposes of the specificity requirement is to give the trial court an opportunity to rule on the complaint. *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009).

16

Several courts, including this one, have applied these principles in unpublished opinions to an appellant's complaint that the trial court failed to hold a hearing on a motion for new trial. *See Meek v. State*, No. 14-02-01024-CR, 2003 WL 22232670, at *2 (Tex. App.—Houston [14th Dist.] Sept. 30, 2003, pet. ref'd) (mem. op., not designated for publication) ("The grounds appellant presented at the trial court level are different from the grounds he raises on appeal—that is, he did not clearly apprise the trial court that he needed a hearing on his motion for new trial because he was complaining about ineffective assistance of counsel as opposed to merely asking the court to reconsider punishment."); *Browning v. State*, No. 05-01-00605-CR, 2002 WL 31820243, at *11 (Tex. App.—Dallas Dec. 17, 2002, pet. ref'd) (mem. op., not designated for publication) ("Appellant's motion for new trial only alleged the 'verdict is contrary to the law and the evidence,' and did not allege perjured testimony was presented at trial. Therefore, appellant did not preserve error on the ground the trial court should have conducted a hearing on appellant's motion for new trial to investigate allegations of perjury.").

The reasoning in these opinions is persuasive. It would violate ordinary notions of procedural default to reverse a trial court's denial of a hearing on a motion for new trial based on a legal theory never presented to the trial court. *See Hailey v. State*, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002) ("[I]t violates ordinary notions of procedural default for a Court of Appeals to reverse a trial court's decision on a legal theory not presented to the trial court by the complaining party." (quotation marks and emphasis omitted)).

Appellant alleges in his motion for new trial and brief on appeal that appellant's cell-phone expert was prepared to testify at trial that appellant was not in the vicinity of the complainant and Horn at the time of the murder. Appellant contends that the State provided appellant with evidence during the middle of trial

17

that caused appellant's expert to change his opinion, and the expert did not offer his earlier opinion in front of the jury. According to appellant, the expert again altered his opinion after trial upon further review of the late-disclosed materials, and the expert would testify that the State's cell-phone expert's analysis was faulty.

In his motion for new trial, appellant presented three grounds: (1) the State's withholding of exculpatory evidence, (2) ineffective assistance of counsel based on the failure to request a mistrial and continuance as a result of the State's late disclosure, and (3) the interest of justice. The only authority cited under the first ground was Rule 21.3(e) of the Texas Rules of Appellate procedure, concerning the State's intentional withholding of evidence tending to establish a defendant's innocence. *See* Tex. R. App. P. 21.3(e). Appellant argued that the expert's opinion was "withheld" as a result of the State providing new evidence during the middle of trial. Although appellant referred to "newly discovered evidence" in the motion, he did so only in the context of the ineffective assistance ground concerning trial counsel's failure to request a continuance after the State disclosed some of the cell-phone-related evidence during trial.

On appeal, appellant contends that his expert's revised opinion, given for the first time after trial, was "newly discovered evidence." He relies on Article 40.001 of the Texas Code of Criminal Procedure, which requires a new trial when material evidence favorable to the accused has been discovered since trial. *See* Tex. Code Crim. Proc. art. 40.001; *see also Keeter v. State*, 74 S.W.3d 31, 36–37 (Tex. Crim. App. 2002) (describing the four-part test for obtaining a new trial based on newly discovered evidence).

Appellant was required to preserve error regarding his complaint about newly discovered evidence. *See Pitman v. State*, 372 S.W.3d 261, 264 n.2 (Tex. App.—Fort Worth 2012, pet. ref'd) (complaint based on newly discovered

evidence not preserved when not raised in motion for new trial or during hearing). Appellant's complaint on appeal about newly discovered evidence is based on a different legal theory than those presented to the trial court: withheld evidence, ineffective assistance, and interest of justice. It would violate ordinary notions of procedural default to reverse the trial court's denial of a hearing on the motion for new trial based on an appellate complaint of newly discovered evidence. For the trial court to make a decision about whether to hold a hearing, the court had to review the motion and affidavit and determine whether they (1) raised matters not determinable from the record and (2) established a reasonable ground showing that appellant could potentially be entitled to relief. *See Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). The trial court never had the opportunity to perform this function based on appellant's novel complaint that his expert's post-trial change in opinion amounted to newly discovered evidence. We cannot reverse the trial court's ruling on a legal theory not presented to the trial court. *See Hailey*, 87 S.W.3d at 122.

Appellant's fifth issue is overruled.

## VI. CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.


/s/     Ken Wise
        Justice

Panel consists of Justices Christopher, Busby, and Wise.
Publish — Tex. R. App. P. 47.2(b).

19