

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00212-CR

Felipe **NEGRETE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 38th Judicial District Court, Uvalde County, Texas
Trial Court No. 2018-05-13279-CR
Honorable Camile Glasscock Dubose, Judge Presiding

Opinion by:  Rebeca C. Martinez, Chief Justice

Sitting:  Rebeca C. Martinez, Chief Justice
Patricia O. Alvarez, Justice
Beth Watkins, Justice

Delivered and Filed: July 28, 2021

AFFIRMED

Felipe Negrete appeals his conviction for possession of methamphetamine in an amount greater than 4 grams but less than 200 grams with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), 481.102(6).  On appeal, he challenges whether there is sufficient corroboration of accomplice-witness testimony and whether the evidence admitted at the bench trial is legally sufficient to support his conviction.  We affirm.

**Background**

On December 19, 2017, Negrete and his girlfriend, Maria Trevino, drove from Batesville, Texas to Uvalde, Texas. Officer Ernesto Guzman of the Uvalde County Sheriff's Department was running license-plate searches on randomly selected vehicles in Uvalde when he observed the vehicle carrying Trevino and Negrete. Officer Guzman performed a license-plate search on the vehicle and determined that the vehicle's registration was expired. He followed the vehicle to a nearby apartment complex and observed Negrete exit the driver's side door and Trevino exit the passenger's side door. Officer Guzman approached Negrete to warn him that the vehicle's registration was expired and that he might be pulled over if he continued to drive the vehicle without proper registration. The officer asked Negrete his name, and Negrete responded with a false name. Officer Guzman observed that Negrete's eyes were reddish, his mannerisms were nervous and shaky, and his speech was fast. Officer Guzman decided to end this initial contact after warning Negrete of the vehicle's expired registration. However, Officer Guzman parked nearby to observe further as Negrete and Trevino entered the apartment complex. Negrete and Trevino soon exited the complex and returned to the vehicle. They then drove away, with Trevino as driver and Negrete as passenger.

As the vehicle exited the complex, Officer Guzman initiated a traffic stop, and Trevino pulled the vehicle into a nearby gas station. Once the vehicle was stopped, Officer Guzman approached Negrete and asked him his name. Negrete again gave a false name. A backup officer arrived soon thereafter and accurately identified Negrete. The officers determined that Negrete was subject to an outstanding warrant for his arrest, and they arrested him.

After placing Negrete under arrest, the officers on scene searched Negrete's person and the vehicle. At trial, the officers testified that Negrete made several statements while under arrest. Officer Guzman testified that Negrete referred to the vehicle as "my ride." Negrete asked the

officers to retrieve the title document from inside the vehicle. He also asked the officers to give Trevino money from his wallet so that she could obtain a ride home and leave the vehicle. Officer Joaquin Ibarra of the Uvalde County Sheriff's Department testified that, after the decision was made to impound the vehicle, Negrete asked, "how do I get my vehicle out?" Officer Guzman testified that Negrete was concerned about the contents of the vehicle while it was unattended. The officers' search of Negrete's person uncovered a wallet containing $958 in a variety of large and small denomination bills. The search of the vehicle uncovered a false-bottomed, 24-ounce aluminum tea can in the back compartment of the driver's seat. The can contained 79 grams of methamphetamine, packaged in several small baggies. Officer Michael Villareal of the Uvalde Sheriff's Department testified at trial that the amount and denominations of the bills and the manner in which the methamphetamine was packaged were consistent with the sale and distribution of narcotics. Trevino consented to a search of her purse, which uncovered multiple glass pipes. The officers at the scene also testified that both Negrete and Trevino appeared to be under the influence of a controlled substance at the time of their arrests.

During his post-arrest interview, Negrete denied any knowledge of the narcotics found in the vehicle. He denied purchasing the tea can but acknowledged he was present when it was purchased. Later, Negrete stated that he was not present when the can was purchased, but he knew where such a can could be purchased. Negrete also admitted to handling empty baggies of the type found in the tea can. Regarding the vehicle, Negrete stated that he was present when it was purchased, that Trevino wanted to obtain an insurance policy for it, that the seller of the vehicle gave them the vehicle title but did not sign the title over to either of them, and that the vehicle was "our ride." Negrete explained that he gave a false name to the officers because he knew there was a warrant outstanding for his arrest. On several occasions during the interview, Negrete tried to ascertain whether Trevino had offered a statement contravening his version of events.

At trial, Trevino testified that she and Negrete were driving to Uvalde to collect money owed to Negrete from a prior sale of narcotics and to sell a pipe. She further testified that Negrete asked her to drive when leaving the apartment complex because he knew there was a warrant outstanding for his arrest. Trevino stated that she and Negrete had smoked methamphetamine on the day of their arrest. She also testified that the vehicle containing the narcotics belonged to Negrete, that he had purchased the vehicle two weeks prior to the arrest, and that "[Negrete] had the authority to make the decision as to whether or not [Trevino] kept the vehicle because it was his vehicle." Trevino stated that she and Negrete had regularly purchased methamphetamine but was unaware how the narcotics in the tea can had gotten there or who had packaged them in the manner they were found. Trevino further testified that Negrete had purchased the tea can at a retail store in San Antonio a week prior to his arrest. Last, Trevino testified that Negrete acquired the money found in his wallet from the prior sale of narcotics.

At the conclusion of trial, the court found Negrete guilty of possession of methamphetamine in an amount greater than 4 grams but less than 200 grams with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), 481.102(6). Negrete timely appealed.

On appeal, Negrete challenges the introduction of Trevino's testimony under the accomplice-witness rule. He argues he is entitled to acquittal because the evidence without Trevino's testimony is insufficient to support his conviction. By this argument, Negrete conflates the accomplice-witness rule with a legal-sufficiency challenge. *See Hernandez v. State*, 585 S.W.3d 537, 547 (Tex. App.—San Antonio 2019, pet. ref'd) (noting appellant's argument conflating these issues). Although related, Negrete raises two separate issues: (1) whether Trevino's accomplice-witness testimony is sufficiently corroborated under Article 38.14 of the Texas Code of Criminal Procedure, and (2) whether the evidence is legally sufficient to support Negrete's conviction under the *Jackson v. Virginia* legal-sufficiency standard. *See Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979); *see also Cantelon v. State*, 85 S.W.3d 457, 460–61 (Tex. App.—Austin 2002, no pet.) (distinguishing the standard for legal sufficiency from the standard for introduction of accomplice-witness testimony). To fully address Negrete's challenge, we first consider the accomplice-witness rule and then whether the evidence is legally sufficient to support Negrete's conviction. *See Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004) (specifying an appellate court has a duty to address a challenge to the legal sufficiency of the evidence, regardless of whether it was raised in the trial court); *Martinez v. State*, 749 S.W.2d 556, 558 (Tex. App.—San Antonio 1988, no pet.) (adopting a two-prong analysis where the complaint on appeal was broad enough to encompass both an issue under the accomplice-witness rule and a challenge to the legal sufficiency of the evidence).

## THE ACCOMPLICE-WITNESS RULE

A. Standard of Review & Applicable Law

Article 38.14 of the Texas Code of Criminal Procedure provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14. The purpose behind the rule is to ensure courts consider such testimony with a measure of caution, since accomplices may lie to shift blame or avoid punishment. *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998). The rule is statutorily imposed "and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007)).

"When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we eliminate the accomplice testimony from consideration and then examine the remaining

portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Hernandez*, 585 S.W.3d at 549 (quoting *Malone*, 253 S.W.3d at 257). "The 'tends-to-connect' standard does not present a high threshold." *Barnes v. State*, No. 04-13-00346-CR, 2014 WL 6979529, at *3 (Tex. App.—San Antonio Dec. 10, 2014, pet. ref'd) (mem. op., not designated for publication) (citing *Cantelon*, 85 S.W.3d at 460). We review evidence corroborating accomplice-witness testimony in the light most favorable to the jury's verdict. *Id.* Although the corroborating evidence does not have to independently establish the defendant's guilt, it must be sufficient such that a rational fact finder could have concluded that it tends to connect the defendant to the crime committed. *Malone*, 253 S.W.3d at 257.

Corroborating evidence may be both direct and circumstantial, and no set amount of evidence is required to satisfy the accomplice-witness rule. *Hernandez*, 585 S.W.3d at 549. "[C]ircumstances that are apparently insignificant may constitute sufficient evidence of corroboration." *Malone*, 253 S.W.3d at 257 (citation omitted). Though each piece of corroborating evidence may not satisfy Article 38.14 in isolation, the rule may still be satisfied if, when taken as a whole, the great weight of the corroborating evidence tends to connect the defendant to the crime committed. *Smith v. State*, 332 S.W.3d 425, 447 (Tex. Crim. App. 2011). Evidence that the defendant was at the scene of the crime is insufficient for corroboration purposes unless other suspicious circumstances are present tending to connect the defendant to the crime committed. *Malone*, 253 S.W.3d at 257. The accused is entitled to acquittal if there is insufficient corroboration of the accomplice-witness testimony. TEX. CODE CRIM. PROC. ANN. art. 38.17; *see also Taylor v. State*, 10 S.W.3d 673, 685 (Tex. Crim. App. 2000) (stating the prosecution's failure to produce any non-accomplice evidence requires acquittal).

B. <u>Analysis</u>

Negrete contends there is insufficient corroborating evidence of Trevino's accomplice-witness testimony to meet the requirements of Article 38.14. However, the record reveals an abundance of non-accomplice-witness evidence that we hold is sufficient to connect Negrete to the crime. *See Malone*, 253 S.W.3d at 257. When viewed in the light most favorable to the conviction, the evidence shows:

- Negrete was in close proximity to the narcotics when they were found by police. *Cf. Smith*, 332 S.W.3d at 443–44 (holding defendant's presence at victims' home when victims were murdered established opportunity).

- Negrete gave conflicting statements regarding ownership of the vehicle and his whereabouts when the tea can was purchased. *Cf. Spiers v. State*, 543 S.W.3d 890, 895 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (holding defendant's implausible and contradictory explanations for his conduct demonstrated evidence of guilt).

- Appellant lied to police about his name twice. *Cf. Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997) ("Evidence of flight and guilty demeanor, coupled with other corroborating circumstances, may tend to connect a defendant with the crime.").

- In his post-arrest interview, Negrete admitted to handling empty baggies similar to those found in the tea can. *Cf. Casanova v. State*, 383 S.W.3d 530, 538 (Tex. Crim. App. 2012) (finding defendant's admission to smoking crack-cocaine earlier in the day, along with other evidence, tended to connect defendant to the possession of the cocaine).

- Officer Guzman testified that appellant's demeanor and overall appearance suggested he was under the influence of a controlled substance at the time of his arrest. *See id.* (stating officer's testimony that defendant appeared under the influence of some intoxicant was a suspicious circumstance tending to connect him to the possession of the cocaine).

- Officer Villarreal testified that the amount of money and denominations of bills found in Negrete's wallet and the manner in which the methamphetamine was packed were circumstances consistent with the sale of narcotics. *See Arellano-Velazquez v. State*, No. 01-16-00789-CR, 2018 WL 454796, at *3 (Tex. App.—Houston [1st Dist.] Jan. 8, 2018, pet. ref'd) (mem. op., not designated for publication) (stating officer's testimony about amount of cocaine and number of cell phones found on defendant, along with other evidence, sufficiently corroborated the accomplice-witness testimony regarding possession of methamphetamine with intent to deliver).

On this record, the trial court rationally could have determined that the non-accomplice-witness evidence tends to connect Negrete to the crime. *See Malone*, 253 S.W.3d at 257; TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), 481.102(6). Consequently, we overrule Negrete's challenge to Trevino's testimony under the accomplice-witness rule and consider this testimony in our legal-sufficiency review.

LEGAL SUFFICIENCY OF THE EVIDENCE

A. <u>Standard of Review & Applicable Law</u>

Under a legal sufficiency review, "a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and

reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011) (citing *Jackson*, 443 U.S. at 319)). Viewing the evidence in this light requires a reviewing court to "defer to the [fact finder's] credibility and weight determinations because the [fact finder] is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The consideration of all evidence under a legal-sufficiency review necessarily includes accomplice-witness testimony when the accomplice-witness rule has been satisfied. *See Moff*, 131 S.W.3d at 488 (stating appellate court's review for legal sufficiency includes "all evidence which the [fact finder] was permitted, whether rightly or wrongly, to consider"); *cf. Hernandez*, 585 S.W.3d at 547–48 ("[U]ncorroborated accomplice witness testimony 'can be sufficient to support a conviction.'" (quoting *Taylor*, 10 S.W.3d at 684 (Tex. Crim. App. 2000))).

B. Analysis

Pursuant to sections 481.112(a) and 481.102(6) of the Texas Health and Safety Code, a person commits an offense if the person knowingly possesses methamphetamine with intent to deliver. TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), 481.102(6).

Trevino testified to the following: (1) both she and Negrete had smoked methamphetamine on the day of their arrests; (2) Negrete purchased the vehicle and tea can shortly before his arrest; (3) "[Negrete] had the authority to make the decision as to whether or not [she] kept the vehicle because it was his vehicle"; (4) she regularly drove with Negrete while he bought and sold methamphetamine; and (5) the money in Negrete's wallet was from the sale of methamphetamine.

Viewing the evidence in the light most favorable to the conviction, we hold that the non-accomplice evidence combined with Trevino's testimony is legally sufficient evidence from which the trial court could find the essential elements of the crime beyond a reasonable doubt.

## CONCLUSION

The judgment of the trial court is affirmed.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH