**Opinion issued December 11, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-17-00746-CR**

**NO. 01-17-00747-CR**

**NO. 01-17-00748-CR**

————————————

**CHARLES ERVIN NELSON, WILLIAM FRANK BANE, JOSEPH SAVOIE, Appellants**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court**
**Lampasas County, Texas**
**Trial Court Case Nos. 20067, 20184, 20080**

---

**MEMORANDUM OPINION**

In these three cases that were tried together, a jury convicted appellants

Charles Ervin Nelson and Joseph Savoie of the Class A misdemeanor offense of

possessing an implement of cockfighting.[1] The trial court assessed their punishment at confinement for one year, probated for one year, and imposed a $2,000 fine. The jury also convicted appellant William Frank Bane of the Class C misdemeanor offense of attending a cockfighting exhibition as a spectator.[2] The trial court assessed Bane's punishment at a $500 fine.

On appeal, the appellants raise numerous issues challenging their convictions, including (1) challenges to the trial court's jurisdiction; (2) challenges to the sufficiency of the evidence; (3) Fourth and Fifth Amendment challenges, including the lack of probable cause to support the search warrant and an inadequate affidavit to support the search warrant; (4) violations of *Brady v. Maryland*; (5) improper exclusion of a witness's testimony; (6) failure to instruct the jury on a statutory defense; and (7) double jeopardy, among other challenges.[3]

---

[1]  *See* TEX. PENAL CODE ANN. § 42.105(b)(5) (West 2016) (providing that person commits offense if person knowingly "manufactures, buys, sells, barters, exchanges, possesses, advertises, or otherwise offers a gaff, slasher, or other sharp implement designed for attachment to a cock with the intent that the implement be used in cockfighting"), § 42.105(g) (providing that offense under subsection (b)(5) is Class A misdemeanor).

[2]  *See id.* § 42.105(b)(6) (providing that person commits offense if person knowingly attends exhibition of cockfighting as spectator), § 42.105(g) (providing that offense under subsection (b)(6) is Class C misdemeanor unless person has been previously convicted of offense under that subsection).

[3]  The charge against appellant Nelson was tried in trial court cause number 20067 and resulted in appellate cause number 01-17-00746-CR. The charge against appellant Bane was tried in trial court cause number 20184 and resulted in appellate cause number 01-17-00747-CR. The charge against appellant Savoie was tried in

We affirm.

## Background

In June 2016, Investigator J. Seery with the Lampasas County Sheriff's Department was contacted by a senior investigator with the Humane Society of the United States who informed Seery that he had an informant who lived in the Lampasas area and wanted to pass on to local law enforcement information about a cockfighting operation. Based on the information provided by the informant, Investigator Seery and another officer went to the area described and observed a "lean-to building," a couple of smaller buildings, and a "pit for fighting cocks." Investigator Seery testified that, based on the design of the pit, it was "obvious" that it was intended for cockfighting.

Investigator Seery set up a camera on a public road outside the entrance to this location to determine if, as reported by the informant, a large number of people were to enter the property. On June 11, 2016, the date supplied by the informant, the camera transmitted to Investigator Seery pictures of numerous cars assembling on the property. He estimated that "a couple hundred people" were at the property on

trial court cause number 20080 and resulted in appellate cause number 01-17-00748-CR. The Texas Supreme Court, pursuant to its docket-equalization authority, transferred these appeals from the Third Court of Appeals in Austin to this Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013) ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.").

3

this day. Investigator Seery obtained a search warrant for the property, which allowed the officers to search for cockfighting equipment and paraphernalia.

The Sheriff's Department had the assistance of a Texas Department of Public Safety helicopter when executing the search warrant. Investigator Seery testified that pandemonium ensued when law enforcement arrived at the property, with people jumping fences and running away, and other people driving through bushes and getting stuck in the mud. The trial court admitted a copy of the video of the encounter taken from the helicopter.

Investigator Seery testified that it was "obvious" that a cockfighting event was occurring when law enforcement arrived at the property. He observed numerous people running away from the area, and he saw live roosters in the fighting pit, as well as dead roosters lying in various locations around the pit. The trial court admitted photographs depicting the set-up of the pit, as well as some of the live and dead roosters in the area. Investigator Seery observed wounds on the dead roosters, and these roosters had bands around their legs where the participants would strap sharp instruments called "gaffs" or "slashers" to cause injury to other roosters during the fight. These instruments had been removed from the dead roosters, but some of the live roosters recovered from an area underneath the fighting pit still had gaffs strapped to their legs. Investigator Seery also observed a box at the scene that

4

participants placed the roosters in to allow the participants to strap the instruments to the rooster's legs before a fight.

The officers received information that spectators were charged $30 to park and enter the event, and participants were charged $350 to enter their roosters in the fight. Most of this money was used as prize money for the individual who won the event. Investigator Seery observed a board that displayed numbers assigned to the roosters, as well as which roosters had won or lost fights, and he also observed betting slips at the scene, as well as a scale next to the board. Investigator Seery identified each of the three appellants as individuals he encountered during the raid on the property.

Investigator M. Barnes also participated in the execution of the search warrant. Immediately upon arriving at the entrance to the property, Investigator Barnes started chasing a man who was fleeing from the scene on foot. Investigator Barnes was unable to apprehend this man, but the man threw a grocery bag into a tank while he was running, and Barnes recovered the bag and its contents. The bag contained two plastic containers that held a total of about $19,000.

Investigator Barnes also searched appellant Nelson's vehicle. He discovered a box, which had a label reading "C.E. Nelson" on top, sitting on the passenger floorboard. The box contained numerous gaffs—defined in the Penal Code as "an artificial steel spur designed to attach to the leg of a cock to replace or supplement

5

the cock's natural spur"[4]—and knives. Investigator Barnes testified that cockfighting participants typically attach the gaffs to the roosters by wrapping the leg in moleskin and using tape and wax string. The box found in Nelson's vehicle also contained moleskin, wax string, scissors, and guards to protect the person from cutting himself on the gaffs. This box was admitted into evidence.

Investigator Barnes also testified that officers recovered a tackle box belonging to appellant Savoie. Due to a misunderstanding concerning which officer initially retrieved the box, the county attorney indicated that he would not accept charges of possession of cockfighting paraphernalia against Savoie. However, Savoie then contacted Investigator Barnes, claiming that the tackle box was his and that he "had gaffs and other property that was taken from him out in the field." The box that Savoie claimed was also admitted into evidence. Investigator Barnes testified that the contents of the box included strips of moleskin, knife guards, knives, a training spur used to train roosters to fight without injuring them, scissors, and wax string.

Finally, Investigator Barnes testified that he had heard appellant Bane testify at a prior hearing before the justice of the peace. Bane admitted being at the property at the time of the raid, although he stated that he "was just there drinking beer with his friends." Bane also stated that he had paid $35 to get onto the property.

---

[4]     *See* TEX. PENAL CODE ANN. § 42.105(a)(4).

The appellants indicated that they wished to call a witness, Steve Perry, to the stand. The prosecutor requested that he be allowed to question Perry on voir dire. Perry stated that he was not at the property on June 11, 2016, and he had not been involved in setting up or organizing the cockfighting event. He stated that the appellants had asked him to testify because he had been involved in drafting Penal Code section 42.105, which criminalizes cockfighting, and he intended to present testimony concerning one of the defenses built into the statute. The defense provides that it is an affirmative defense to prosecution under section 42.105 that the person's conduct "was incidental to collecting bridles, gaffs, or slashers." *See* TEX. PENAL CODE ANN. § 42.105(c)(2) (West 2016); *see also id.* § 42.105(a)(5) (defining "slasher" as "a steel weapon resembling a curved knife blade designed to attach to the foot of a cock"). Perry agreed with the State that he intended to testify about the status of the law, and he stated, "I just want to testify. I mean, I've got information I think the jury needs to hear." The trial court refused to allow Perry to testify, ruling that the court would provide the law to the jury. The appellants did not call any other witnesses.

During the charge conference, none of the parties presented any objections to the language of the charges. The charges for appellants Nelson and Savoie—who were both charged with possession of cockfighting implements—did not include an

instruction that it was a defense to prosecution that their conduct was incidental to collecting gaffs or slashers.

Ultimately, the jury found appellants Nelson and Savoie guilty of possession of cockfighting implements, a Class A misdemeanor, and the jury found appellant Bane guilty of attending a cockfight as a spectator, a Class C misdemeanor. The trial court sentenced both Nelson and Savoie to confinement for one year, probated for one year, and imposed a $2,000 fine. The trial court imposed a $500 fine on Bane. This appeal followed.

**Jurisdiction of County Court**

In several issues, the appellants contend that the Lampasas County Court lacked jurisdiction over their cases. Specifically, they argue that the State of Texas had no standing to sue or bring charges against them; that the county attorney and the trial court acted "outside their public capacity" which "removes standing and immunity from them"; that the State never established who was injured by the alleged offenses; and that the trial court did "not have subject matter jurisdiction over common law issues."

Constitutional county courts, such as the Lampasas County Court, have "exclusive original jurisdiction of misdemeanors other than misdemeanors involving official misconduct and cases in which the highest fine that may be imposed is $500 or less." TEX. GOV'T CODE ANN. § 26.045(a) (West Supp. 2018); TEX. CODE CRIM.

8

PROC. ANN. art. 4.07 (West 2015) ("The county courts shall have original jurisdiction of all misdemeanors of which exclusive original jurisdiction is not given to the justice court, and when the fine to be imposed shall exceed five hundred dollars."); *see also* TEX. CONST. art. V, § 16 ("The County Court has jurisdiction as provided by law."). Constitutional county courts have appellate jurisdiction "in criminal cases of which justice courts and other inferior courts have original jurisdiction." TEX. GOV'T CODE ANN. § 26.046 (West 2004); TEX. CODE CRIM. PROC. ANN. art. 4.08 (West 2015) ("The county courts shall have appellate jurisdiction in criminal cases of which justice courts and other inferior courts have original jurisdiction."); *see* TEX. CONST. art. V, § 19 ("Justice of the peace courts shall have original jurisdiction in criminal matters of misdemeanor cases punishable by fine only . . . .").

In this case, Nelson and Savoie were charged with possession of implements to be used in cockfighting, in violation of Penal Code section 42.105(b)(5). *See* TEX. PENAL CODE ANN. § 42.105(b)(5) ("A person commits an offense if the person knowingly . . . possesses . . . a gaff, slasher, or other sharp implement designed for attachment to a cock with the intent that the implement be used in cockfighting."). This offense is a Class A misdemeanor. *Id.* § 42.105(g). Class A misdemeanors are punishable by a fine not to exceed $4,000, confinement in jail for a term not to exceed one year, or both. *Id.* § 12.21 (West 2011). As this offense is a misdemeanor

9

other than (1) a misdemeanor involving official misconduct and (2) a case in which the highest fine that may be imposed is $500, Nelson's and Savoie's cases were within the exclusive original jurisdiction of the Lampasas County Court. *See* TEX. GOV'T CODE ANN. § 26.045; TEX. CODE CRIM. PROC. ANN. art. 4.07.

Bane was charged with the offense of attending a cockfighting event as a spectator, a violation of Penal Code section 42.105(b)(6). *See* TEX. PENAL CODE ANN. § 42.105(b)(6) ("A person commits an offense if the person knowingly . . . attends as a spectator an exhibition of cockfighting."). This offense is a Class C misdemeanor. *Id.* § 42.105(g). Class C misdemeanors are punishable by a fine not to exceed $500. *Id.* § 12.23 (West 2011). As this offense was punishable by a fine only, the justice court of Lampasas County had original jurisdiction over this case, and the Lampasas County Court had appellate jurisdiction. *See* TEX. CONST. art. V, §§ 16, 19; TEX. GOV'T CODE ANN. § 26.046; TEX. CODE CRIM. PROC. ANN. art. 4.08. The record reflects that Bane was convicted in a jury trial in the justice court and he then appealed his case to the Lampasas County Court for a trial de novo. *See* TEX. CODE CRIM. PROC. ANN. art. 45.042(a)–(b) (West 2018) (providing that "[a]ppeals from a justice court . . . shall be heard by the county court" and that, except in circumstance not presented here, "trial shall be de novo"). Bane's case was therefore within the appellate jurisdiction of the Lampasas County Court.

Article V, Section 12(b) of the Texas Constitution provides:

An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments and informations, including their contents, amendment, sufficiency, and requisites, are as provided by law. The presentment of an indictment or information to a court invests the court with jurisdiction of the cause.

TEX. CONST. art. V, § 12(b); *Teal v. State*, 230 S.W.3d 172, 179–80 (Tex. Crim. App. 2007) (noting that charging instrument must charge "a person" with "the commission of an offense" and that, to confer subject-matter jurisdiction, allegations in charging instrument must be "clear enough that one can identify the offense alleged"). The record here contains appellants' charging instruments—informations alleging possession of an implement to be used in cockfighting for Nelson and Savoie, and a complaint alleging attendance at a cockfighting event as a spectator for Bane—and the language of the charging instruments identifies each appellant and tracks the statutory language setting out the offenses. Appellants do not challenge on appeal the sufficiency of the charging instruments. We conclude that these charging instruments properly vested the Lampasas County Court with jurisdiction to hear these cases.

Appellants argue that the State is a "corporate fiction" and not a "living, injured party," and that it lacks standing to sue and lacks jurisdiction over private

11

property and over persons who are not state employees.[5] Appellants cite no law supporting the proposition that the State lacks standing to enforce criminal statutes or that the State can only enforce its laws on land owned by the State and against State employees. Instead, the Texas Constitution provides that the county attorney—in counties such as Lampasas County that do not have a "resident Criminal District Attorney"—"shall represent the State in all cases in the District and inferior courts . . . ." TEX. CONST. art. V, § 21. The Code of Criminal Procedure further provides that the county attorney "shall represent the State in all criminal cases under examination or prosecution in said county." TEX. CODE CRIM. PROC. ANN. art. 2.02 (West 2005); *see Medrano v. State*, 421 S.W.3d 869, 878 (Tex. App.—Dallas 2014, pet. ref'd) (stating that courts have long recognized that, along with "various civil duties," primary function of county and district attorneys is "to prosecute the pleas of the state in criminal cases"); *Shepperd v. Alaniz*, 303 S.W.2d 846, 850 (Tex. Civ. App.—San Antonio 1957, no writ) ("It has always been the principal duty of the district and county attorneys to investigate and prosecute the violation of all criminal laws . . . and these duties cannot be taken away from them by the Legislature and given to others."); *see also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248, 100 S. Ct.

---

[5]     To the extent appellants argue that the State and the trial court lacked jurisdiction because the State failed to state a proper claim against the appellants and because "there was no proof, evidence or witness against" appellants, we address those arguments in the section of the opinion concerning sufficiency of the evidence to support the verdict.

1610, 1616 (1980) (stating that "wide discretion" is given to criminal prosecutors in process of enforcing laws and, in adversarial system, prosecutors "are necessarily permitted to be zealous in their enforcement of the law"). The Lampasas County Attorney thus has the authority to act on behalf of the State of Texas and prosecute criminal offenses occurring within Lampasas County.

**Sufficiency of the Evidence**

Appellants argue that the State failed to present sufficient evidence to support their convictions.

## A. *Standard of Review*

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Griffin v. State*, 491 S.W.3d 771, 774 (Tex. Crim. App. 2016). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). The jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Rivera v. State*, 507 S.W.3d 844, 853–54 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Leroy v. State*, 512 S.W.3d 540, 543 (Tex. App.—Houston [1st Dist.] 2016, no pet.). We give great deference to the jury's credibility determinations. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination."). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

## B.    *Analysis*

To establish that appellants Nelson and Savoie committed the offense of possessing a cockfighting implement, the State was required to prove that Nelson and Savoie intentionally and knowingly possessed a gaff, slasher, or other sharp

implement designed for attachment to a cock with the intent that the implement be used in cockfighting.[6] *See* TEX. PENAL CODE ANN. § 42.105(b)(5). With respect to appellant Bane, the State was required to prove that Bane knowingly attended an exhibition of cockfighting as a spectator. *See id.* § 42.105(b)(6). The Penal Code defines "cock" as "the male of any type of domestic fowl," "cockfighting" as "any situation in which one cock attacks or fights with another cock," "gaff" as "an artificial steel spur designed to attach to the leg of a cock to replace or supplement the cock's natural spur," and "slasher" as "a steel weapon resembling a curved knife blade designed to attach to the foot of a cock." *Id.* § 42.105(a)(2)–(5).

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (West 2011). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b).

---

[6] Appellants Nelson and Savoie argue that they first received a citation for the offense of possession of gambling paraphernalia, which is a separate offense under Penal Code section 47.06, and that the State brought this charge knowing that their gaffs and slashers did not meet the statutory definition of "gambling paraphernalia," yet this was not disclosed to the jury. Even if Nelson and Savoie were originally cited for possession of gambling paraphernalia, which is not reflected in the appellate record, the State later charged them both by information with the offense of possessing an implement with the intent to use that implement in cockfighting, which is the charge on which the State proceeded to trial and is the charge for which the jury found them both guilty.

At trial, the State presented evidence that a confidential informant met with Investigator Seery of the Lampasas County Sheriff's Department and informed him of a cockfighting operation that was to hold an event at a particular location on June 11, 2016. Investigator Seery and another officer went to this location and observed several buildings and a pit consistent with the type of pits used in cockfights. The officers placed a camera on another property and set up the camera so that it would notify the officers when people began arriving at the subject property.

When large groups of people started arriving at the property on June 11, Investigator Seery obtained a search warrant, and officers from several agencies conducted a raid of the property. Chaos ensued, and numerous people were able to flee the property. Officers observed dead and bloodied roosters, some of which had tape on their legs consistent with having recently had sharp implements attached to the legs, live roosters underneath the fighting pit, a board keeping track of which roosters had fought that day, betting slips, and around $19,000 in cash.

Appellants were three individuals at the scene who did not flee. The State presented evidence that, during the course of the raid, officers searched Nelson's truck and found a box that was labeled with Nelson's name and that contained gaffs and slashers. Officers also recovered a similar box that Savoie verified belonged to him and that also contained gaffs and slashers. In addition to gaffs and slashers, the boxes contained moleskin, wax string, scissors, and knife guards. Officers testified

16

that these items are commonly used to attach gaffs and slashers to roosters before a fight. The box belonging to Savoie also contained a "training spur" used when training roosters to fight.

Nelson and Savoie argue that the State failed to present evidence that they possessed gaffs and slashers with the intent that these implements be used in cockfighting, as required by section 42.105, pointing out that the gaffs and slashers were found at the scene in a box and were not attached to a rooster. Section 42.105, however, does not include language requiring that gaffs and slashers actually be attached to a rooster, or another type of fowl, for the possession of these items to be illegal. *See id.* § 42.105(b)(5). Instead, the statute prohibits the possession of a gaff or slasher "with the intent that the implement be used in cockfighting." *Id.* The State presented evidence that Nelson and Savoie possessed not just gaffs and slashers while at a cockfighting event, but that they also possessed items typically used to attach gaffs and slashers to a rooster's leg, such as moleskin, wax string, and scissors, as well as "knife guards" used to prevent cuts while attaching sharp objects to the roosters.

Considering all of the evidence the State presented, we conclude that a rational jury could have found, beyond a reasonable doubt, that Nelson and Savoie possessed gaffs and slashers with the intent that they be used in cockfighting. *See id.*; *see also Gonzalez v. State*, 376 S.W.3d 141, 144 (Tex. App.—Tyler 2012, no pet.) (noting,

17

in sufficiency challenge to conviction for knowingly causing two livestock animals to fight, that scene of arrest included "array of cockfighting equipment located near what appeared to be a cockfighting ring," that this equipment included "fighting knives, moleskin, leather straps, wax thread, vitamins, and syringes," and that it was "difficult to understand why the knives and other paraphernalia would be present" if defendant was not engaged in fighting chickens).

With respect to Bane, Investigator Barnes testified that Bane had admitted to being present at the property, although Bane stated that he "was just there drinking beer with his friends." Bane also admitted that he had paid $35 to get on the property. Investigator Seery testified that it was very hot on June 11 when the raid occurred, there were "a couple hundred people" at the property, and it was "obvious" that a cockfighting event was occurring at the time of the raid. It was within the province of the jury, as the exclusive judge of the credibility of the evidence, to disbelieve Bane's prior statement that, after paying $35 to get onto the property, he was merely present at the property on a hot June day to drink with friends and instead to believe the State's evidence that Bane was present, along with hundreds of other people, to witness a cockfighting event. *See Rivera*, 507 S.W.3d at 853–54 (stating that jury, as sole judge of credibility, may accept one version of facts and reject another). We conclude that a rational jury could have found, beyond a reasonable doubt, that Bane

knowingly attended an exhibition of cockfighting as a spectator. *See* TEX. PENAL CODE ANN. § 42.105(b)(6).

We hold that the State presented sufficient evidence to support appellants' convictions.

**Fourth and Fifth Amendment Challenges**

In several issues, appellants raise challenges under the Fourth and Fifth Amendments. Appellants argue that they were searched on private property without a warrant and "without an affidavit from a victim particularly describing" the appellants and their property that officers seized and that the warrantless search was not justified. Appellants contend that, in obtaining the search warrant for the property, Investigator Seery improperly "took orders from" a Humane Society employee in California and a "non-English-speaking person who was possibly paid to inform" in Texas and that the informant's information did not constitute exigent circumstances justifying a warrantless search. Appellants also argue that Investigator Seery's affidavit was insufficient to support a determination of probable cause because it did not reveal the informant's basis of knowledge or provide sufficient facts to determine the informant's veracity and reliability.

Appellants further argue that officers questioned them without giving *Miranda* warnings and without allowing the presence of counsel. Appellants also argue that their identities were used against them when the trial court generated the

19

case names and that their property was used against them after the seizure of the property.

The appellate record does not include the search warrant or Investigator Seery's supporting affidavit. Although the record does include a copy of appellants' motion to suppress, the record does not contain a ruling by the trial court on this motion, and the reporter's record does not contain a hearing on the motion to suppress. All of appellants' Fourth and Fifth Amendment challenges require a determination by the trial court for us to review on appeal, but no such determination is included in the appellate record. We therefore hold that appellants have presented nothing for us to review in this regard. *See Bonilla v. State*, 452 S.W.3d 811, 813 (Tex. Crim. App. 2014) ("The party who complains about the trial judge's action on direct appeal bears the burden of objecting at trial and providing a record that shows the trial judge's error."); *see also Guzman v. State*, 923 S.W.2d 792, 795 (Tex. App.—Corpus Christi 1996, no pet.) (stating that "[m]ere assertions in a brief will not suffice to satisfy" burden of presenting sufficient record demonstrating reversible error); *Burks v. State*, 904 S.W.2d 208, 209–10 (Tex. App.—Fort Worth 1995, no pet.) ("It is well-settled that the appellant bears the burden of providing the appellate court with a record sufficient to show error requiring reversal."); *Stewart v. State*, 856 S.W.2d 567, 572 (Tex. App.—Beaumont 1993, no pet.) (stating that appellant, as party seeking review of alleged trial court error, bears burden to see

that sufficient record is presented to appellate court to show that error required reversal).

## Brady Violation

Appellants argue that the State violated the requirements of *Brady v. Maryland* when it did not disclose "key exculpatory evidence to the jury and excluded it from the record." Specifically, appellants contend that the State violated *Brady* by failing to disclose to the jury five memorandums and four DVDs—all of which contained presentations addressing the constitutionality of statutes like Penal Code section 42.105—that a man named B.L. Cozad served on the State and the Lampasas County Sheriff on appellants' behalf. They argue that this evidence would have established that they were not guilty because the statute under which they were charged is unconstitutional.[7]

*Brady* requires the prosecution to disclose evidence that is favorable to the accused when that evidence is material to guilt or punishment. *See* 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963); *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011) ("*Brady* held that the State has a constitutional duty to disclose to a

---

[7] Although appellants assert throughout their briefs that Penal Code section 42.105 is unconstitutional, they cite no law supporting this proposition and do not undertake a constitutionality analysis. Therefore, this argument is not preserved. *See* TEX. R. APP. P. 38.1(i) (providing that appellate briefs "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

21

defendant material, exculpatory evidence."). To establish a *Brady* violation, an appellant must demonstrate that (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable probability that, had the evidence been disclosed, the outcome of the trial would have been different. *Ex parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012); *see Strickler v. Greene*, 527 U.S. 263, 280, 119 S. Ct. 1936, 1948 (1999) (noting that, in materiality inquiry, question is whether reasonable probability exists that "had the evidence been disclosed *to the defense*," result of proceeding would have been different) (emphasis added). *Brady* is not implicated, however, when the defendant was already aware of the information. *Pena*, 353 S.W.3d at 810; *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *see also United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397 (1976) (stating that *Brady* applies in situations in which information "had been known to the prosecution but unknown to the defense"); *Ex parte Chavez*, 213 S.W.3d 320, 325 (Tex. Crim. App. 2006) (stating that no due process violation occurs "under circumstances in which the defendant himself already knew about the exculpatory facts").

Appellants argue that the State violated *Brady* by failing to disclose exculpatory evidence—the memorandums and DVDs provided by Cozad—to the jury. *Brady*, however, concerns the State's duty to disclose exculpatory evidence to

*the defense*. *See Strickler*, 527 U.S. at 280, 119 S. Ct. at 1948; *Pena*, 353 S.W.3d at 810. There is no indication that the State withheld the information supplied by Cozad or any other information from the appellants, and there is also no indication that the information supplied by Cozad was unknown to the appellants. *See Pena*, 353 S.W.3d at 810 (stating that State has no duty under *Brady* when defendant was actually aware of exculpatory evidence); *Hayes*, 85 S.W.3d at 815 (stating that *Brady* is not implicated when defendant is already aware of information). We therefore conclude that appellants have not established that the State committed a *Brady* violation.[8]

---

[8] We also note that, although appellants argue that the State should have disclosed this information to the jury, they have not demonstrated that the information provided by Cozad would have been admissible before the jury. This information is in the form of letters and presentations arguing that animal cruelty laws, such as Penal Code section 42.105, are unconstitutional. The constitutionality of a criminal statute is a question of law for the court, not a question of fact for the jury. *See Salinas v. State*, 464 S.W.3d 363, 366 (Tex. Crim. App. 2015); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007) (providing that jury "is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby"); *see also Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011) ("The State does not have a duty to disclose favorable, material evidence if it would be inadmissible in court."). Appellants raise a similar argument that the State should have disclosed to the jury the fact that the search and seizure of their property occurred without a warrant. However, although appellants cite an article of the Code of Criminal Procedure which sets out the general duties of a district attorney and states that district attorneys "shall not suppress facts," appellants cite no law requiring the State to disclose information relevant to the propriety of a search to the jury. Instead, it is the trial court, generally in the context of a hearing on a motion to suppress, that addresses complaints concerning the propriety of a particular search. *See Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007) (stating that, unless disputed fact issue exists, legality of police conduct regarding searches, seizures, and obtaining evidence is "determined by the trial judge alone, as a question of law").

## Double Jeopardy

Appellant Bane argues that the State violated the prohibition against double jeopardy because he was first tried in the justice of the peace court in December 2016 and, after conviction, he was then tried a second time in the Lampasas County Court in August 2017.

The Fifth Amendment to the United States Constitution protects against double jeopardy, providing that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Double Jeopardy Clause protects an accused against (1) a second prosecution for the same offense after an acquittal; (2) a second prosecution for the same offense after a conviction; and (3) multiple punishments for the same offense. *Ex parte Amador*, 326 S.W.3d 202, 205 (Tex. Crim. App. 2010); *Evans v. State*, 299 S.W.3d 138, 140–41 (Tex. Crim. App. 2009).

Contrary to Bane's assertion on appeal, this case does not involve successive prosecutions for the same offense. Bane was first charged with attending a cockfight as a spectator, a Class C misdemeanor punishable by fine only, in the Justice of the Peace Precinct One of Lampasas County. *See* TEX. CONST. art. V, § 19 ("Justice of the peace courts shall have original jurisdiction in criminal matters of misdemeanor cases punishable by fine only . . . ."); TEX. PENAL CODE ANN. § 12.23 ("An individual adjudged guilty of a Class C misdemeanor shall be punished by a fine not

to exceed $500."); *id.* § 42.105(g) (providing that offense under section 42.105(b)(6), punishing attendance of cockfighting exhibition as spectator, is Class C misdemeanor). The record reflects that a jury found Bane guilty of this offense, and Bane filed a bond and an appeal to the Lampasas County Court, which ultimately rendered a judgment of conviction against Bane after a jury trial. Government Code section 26.046 provides that a constitutional county court, such as the Lampasas County Court, has "appellate jurisdiction in criminal cases of which justice courts . . . have original jurisdiction." TEX. GOV'T CODE ANN. § 26.046; *see also* TEX. CODE CRIM. PROC. ANN. art. 45.042(a)–(b) (providing that "[a]ppeals from a justice court . . . shall be heard by the county court" and that, except in circumstance not presented here, "trial shall be de novo").

After his conviction in the justice court, Bane had a statutory right to appeal the case to the county court and receive a trial de novo. Bane availed himself of this right. The Lampasas County Court was therefore exercising its appellate jurisdiction over Bane, and the proceeding in that court was not a successive prosecution after a conviction in violation of the double jeopardy clause. *See* TEX. GOV'T CODE ANN. § 26.046. We conclude that the proceedings against Bane in the Lampasas County Court did not violate the prohibition against double jeopardy.

## Exclusion of Evidence

Appellants argue that the trial court erred by refusing to allow their witness, Steve Perry, to testify concerning the statutory defenses built into Penal Code section 42.105.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement, that is, when the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Id.* at 83 (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)).

Relevant evidence is evidence that has any tendency to make a fact of consequence more or less probable than it would be without the evidence. TEX. R. EVID. 401; *Henley*, 493 S.W.3d at 83. To be relevant, evidence must be both material and probative. *Henley*, 493 S.W.3d at 83 (citing *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001)). A defendant has a fundamental right to present evidence of a defense "as long as the evidence is relevant and is not excluded by an established evidentiary rule." *Id.* (quoting *Miller*, 36 S.W.3d at 507).

Here, the appellants called Steve Perry to testify on their behalf. The State questioned Perry on voir dire outside the presence of the jury on the topics that Perry intended to discuss. Perry agreed with both the State and the trial court that he was

not present at the property on June 11, 2016, and that he did not have personal knowledge of what occurred at the property. He agreed that he had learned about what had happened from reading offense reports and other materials after the fact. He stated that he had been involved in the passage of Penal Code section 42.105(c), which established an affirmative defense to prosecution if the actor's conduct "was incidental to collecting bridles, gaffs, or slashers." *See* TEX. PENAL CODE ANN. § 42.105(c)(2). Perry stated that he would testify concerning the status of the law. He, however, gave no indication that he had personal knowledge concerning whether the gaffs and slashers possessed by Nelson and Savoie were collectibles. Instead, the voir dire questioning of Perry revealed that his potential testimony concerned the law itself, not the particular facts of the case.

The trial court refused to allow Perry to testify, reasoning that Perry had no relevant information concerning the events of June 11, 2016, and that it was not proper for a witness to explain the law to the jury; instead, that was the obligation of the court in the jury charge, based on the evidence presented at trial.

The jury is the judge of facts; it is the role of the trial court to instruct the jury on the law relevant to the case. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007) ("Unless otherwise provided by this Code, the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby."); *id.* art. 36.14 (West 2007) (providing that trial court shall deliver to jury "a written

27

charge distinctly setting forth the law applicable to the case"); *Martinez v. State*, 753 S.W.2d 165, 169 (Tex. App.—Beaumont 1988, pet. ref'd) (holding that trial court did not err in excluding expert testimony concerning law of trusts in misapplication of fiduciary property case because "it is the trial court's province to instruct the jury on the law relevant to the case"). We conclude that the trial court did not err by excluding Perry's testimony.

**Failure to Give Defensive Instruction**

Appellants Nelson and Savoie also argue that the trial court erred by not including an instruction in the jury charge that it was an affirmative defense to prosecution that the gaffs and slashers that they possessed were collectibles.

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.14; *Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2007). The trial court must instruct the jury on statutory defenses, affirmative defenses, and justifications "whenever they are raised by the evidence." *Walters*, 247 S.W.3d at 208–09; *see also* TEX. PENAL CODE ANN. § 2.04(c) (West 2011) ("The issue of the existence of an affirmative defense is not submitted to the jury unless evidence is admitted supporting the defense."). "A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks that the

28

testimony is not worthy of belief." *Walters*, 247 S.W.3d at 209. However, the trial court has no duty to instruct the jury sua sponte on unrequested defensive issues "because an unrequested defensive issue is not the law applicable to the case." *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). "A defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that he did not preserve by request or objection: he has procedurally defaulted any such complaint." *Id.*; *see Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (stating that if defendant fails to object to absence of "defense-benefitting instructions" in jury charge, "the trial court will have committed no error at all" by failing to submit such instructions).

Penal Code section 42.105 prohibits several different acts, including the possession of "a gaff, slasher, or other sharp implement designed for attachment to a cock with the intent that the implement be used in cockfighting." TEX. PENAL CODE ANN. § 42.105(b)(5). Section 42.105(c) provides that it "is an affirmative defense to prosecution under this section that the actor's conduct . . . was incidental to collecting bridles, gaffs, or slashers." *Id.* § 42.105(c)(2).

At the charge conference, Nelson and Savoie objected to the charge solely on the basis that the trial court lacked jurisdiction over their cases. They did not request an instruction on Penal Code section 42.105(c), nor did they object to the absence of such an instruction in the charge. The trial court, therefore, had no duty to sua sponte

instruct the jury on this defensive issue, and, by failing to request or object to the absence of this instruction, Nelson and Savoie procedurally defaulted this complaint. *See Mendez*, 545 S.W.3d at 552; *Vega*, 394 S.W.3d at 519.

Moreover, even if Nelson and Savoie had properly requested an instruction on section 42.105(c), they were entitled to a jury instruction on this statutory affirmative defense only if this defensive issue was raised by the evidence at trial. *See Walters*, 247 S.W.3d at 208–09. However, no evidence presented at trial raised this defense. Although Nelson and Savoie argued during their opening statements and closing arguments that the gaffs and slashers that they possessed were part of a collection, statements during opening statements and closing arguments are not evidence. *See Ketchum v. State*, 199 S.W.2d 581, 597 (Tex. App.—Corpus Christi 2006, pet. ref'd) ("The opening statement in a criminal case is an outline of facts which the prosecution in good faith expects to prove."); *Parra v. State*, 935 S.W.2d 862, 871 (Tex. App.—Texarkana 1996, pet. ref'd) ("The purpose of an opening statement is to advise the jury of facts relied on and of issues involved, and to give the jury a general picture of the facts and the situations so that the jury will be able to understand the evidence."); *see also Cary v. State*, 507 S.W.3d 750, 755 (Tex. Crim. App. 2016) (stating that "arguments of the parties and their trial theories are not evidence"). Furthermore, although Savoie, in particular, referred to his gaffs and slashers as "collectibles" when questioning Investigator Seery, Seery did not testify

that the gaffs and slashers recovered from Savoie were collectibles, and Savoie's questions themselves do not constitute evidence. *See Torres v. State*, 371 S.W.3d 317, 320 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) ("Questions or statements of counsel not under oath do not constitute evidence.") (quoting *Delgado v. State*, 544 S.W.2d 929, 931 (Tex. Crim. App. 1977)).

None of the three witnesses at trial testified that Nelson's and Savoie's gaffs and slashers seized during the search of the property constituted collectibles or that their conduct was "incidental to collecting . . . gaffs or slashers." *See* TEX. PENAL CODE ANN. § 42.105(c)(2). We therefore conclude that because no evidence presented at trial raised this statutory affirmative defense, Nelson and Savoie were not entitled to an instruction on this defense, and the trial court did not err by failing to include such an instruction in the jury charge.[9] *See id.* § 2.04(c); *Walters*, 247 S.W.3d at 208–09.

---

[9] Appellants also argue that the trial court erroneously failed to instruct the jury that it had the right to nullify an unconstitutional law. "Although jury nullification is a recognized part of our judicial system, there is no constitutional requirement that a trial judge instruct the jury on nullification." *Stefanoff v. State*, 78 S.W.3d 496, 502 (Tex. App.—Austin 2002, pet. ref'd). Appellants were not entitled to an instruction on jury nullification and, thus, the trial court did not err by failing to give such an instruction. *See id.* (stating that "while jury nullification may exist as part of our justice system, it is not a legal standard and is not a constitutional right of the defendant") (quoting *Mouton v. State*, 923 S.W.2d 219, 222 (Tex. App.—Houston [14th Dist.] 1996, no pet.)).

## Other Challenges

### A.    *Bill of Attainder*

Appellants argue that the State's prosecution of them after a "false arrest based on an anonymous California complaint" constitutes a prohibited bill of attainder.

Both the United States and the Texas Constitutions prohibit bills of attainder. *See* U.S. CONST. art. I, §§ 9, 10; TEX. CONST. art. I, § 16. These provisions "prohibit legislatures from singling out disfavored persons and meting out summary punishment for past conduct." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266, 114 S. Ct. 1483, 1497 (1994). A bill of attainder is "a legislative act which inflicts punishment without a judicial trial." *United States v. Lovett*, 328 U.S. 303, 315, 66 S. Ct. 1073, 1078 (1946). To be considered a bill of attainder, a law must (1) specify the affected person or persons, (2) inflict punishment, and (3) fail to provide for a judicial trial. *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 846–47, 104 S. Ct. 3348, 3352 (1984). Historically, bills of attainder name the person to be punished, but "the singling out of an individual for legislatively prescribed punishment constitutes an attainder whether the individual is called by name or described in terms of conduct which, because it is past conduct, operates only as a designation of particular persons." *Id.* at 847, 104 S. Ct. at 3352.

Here, the State's prosecution of appellants is not a legislative act. Even if, however, we construe appellants' complaints as arguing that Penal Code section

32

42.105 is an impermissible bill of attainder, the law does not specify an affected person, appellants have not demonstrated that section 42.105 was enacted to punish past conduct, and appellants received a trial by jury. *See id.* at 846–47, 104 S. Ct. at 3352. We conclude that Penal Code section 42.105 does not constitute a prohibited bill of attainder.

**B.** *Misuse of Appellants' Identities*

Appellants suggest that court personnel, the State, and the trial court possibly created "accounts" using appellants' identities, signatures, and case numbers. They argue they "had rights to know about any account being created in [their] name[s]," including "who was using [their] identit[ies] to create accounts, what the accounts were for, if they were being used for profit, who was sharing the proceeds without [their] knowledge, and who was supposed to give [them] a 1099 OID to share the proceeds with [them]." They further argue that were unaware that, "by showing up in court, [they] had unwittingly contracted with not one but three or more privately-held, for-profit corporations, who did not disclose these facts to [them] that they had a vested interest in getting [them] convicted and obtaining [their] signature[s] on a piece of paper which they could trade on Wall Street without sharing the proceeds with [them]." Appellants argue that they were entitled to, but were denied, an accounting.

Appellants have, however, pointed to no evidence that court personnel, the State, or the trial court created any "accounts" in appellants' names or did anything untoward with appellants' identities. Appellants have cited no authority holding that they were entitled to an accounting.

## C.    *Representative Jury*

Appellants argue that the jury was "stacked with people who were not [appellants'] peers—young enough to be [their] children, and not farmers." Although venire panels must represent a fair cross-section of the community, there is no requirement that the petit jury actually chosen for a particular case "mirror the community and reflect the various distinctive groups in the population." *Gray v. State*, 233 S.W.3d 295, 300 (Tex. Crim. App. 2007) (quoting *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S. Ct. 692, 702 (1975)). "Defendants are not entitled to a jury of any particular composition." *Taylor*, 419 U.S. at 538, 95 S. Ct. at 702. Appellants were not entitled to a jury that resembled them in age and occupation. Furthermore, appellants have raised no argument that the venire itself did not represent a fair cross-section of the community.

## D.    *Discovery*

Appellants argue that the prosecutor and the sheriff of Lampasas County failed to comply with discovery, pointing to the prosecutor's and sheriff's failure to

respond to numerous requests for admissions, subpoenas, and requests for production of documents served by appellants.

*Brady v. Maryland* "essentially created a federal constitutional right to certain minimal discovery," but the United States Supreme Court has held that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Pena*, 353 S.W.3d at 809 & n.10 (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 846 (1977)). Although the State has a duty under *Brady* to disclose "exculpatory and impeachment evidence to the defense that is material to either guilt or punishment," a criminal defendant "has no general right to pretrial discovery of evidence in the State's possession." *Hall v. State*, 283 S.W.3d 137, 163 (Tex. App.—Austin 2009, pet. ref'd).

Limited statutory discovery is available pursuant to Code of Criminal Procedure article 39.14. *Michaelwicz v. State*, 186 S.W.3d 601, 612 (Tex. App.—Austin 2006, pet. ref'd). Article 39.14 provides, in relevant part:

> (a) [A]s soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state. . . .

35

TEX. CODE CRIM. PROC. ANN. art. 39.14(a) (West Supp. 2018); *In re Watkins*, 369 S.W.3d 702, 707 (Tex. App.—Dallas 2012, orig. proceeding) (stating that article 39.14 authorizes judge to order State to allow discovery "of tangible objects that are not privileged and that are in the State's possession" upon showing of good cause, materiality, and that item is possessed by State). Article 39.14 does not require the State to comply with general tools of discovery used in civil cases, such as the requests for admissions and requests for production of documents that appellants served here. Appellants have demonstrated no entitlement to this discovery, and we decline to impose such an obligation on the State.

## E. *Failure to Deliver Summons*

Appellants argue that the record does not contain a complaint that complies with Code of Criminal Procedure article 2.04, that they never received a summons, and that they never received a warrant or summons that complies with Federal Rule of Criminal Procedure 4.[10]

Code of Criminal Procedure article 2.04 provides that "[u]pon complaint being made before a district or county attorney that an offense has been committed in his district or county, he shall reduce the complaint to writing and cause the same

---

[10] To the extent appellants argue that reversible error occurred because they never received a warrant or summons that complies with Federal Rule of Criminal Procedure 4, we note that that rule is inapplicable in state court and that, instead, the Texas Code of Criminal Procedure governs in this case.

36

to be signed and sworn to by the complainant, and it shall be duly attested by said attorney." TEX. CODE CRIM. PROC. ANN. art. 2.04 (West 2005); *see also id.* art. 15.04 (West 2015) ("The affidavit made before the magistrate or district or county attorney is called a 'complaint' if it charges the commission of an offense."). The appellate record in this case includes copies of the complaints made against all three appellants: complaints made by Investigator Barnes and sworn to before John Greenwood, the Lampasas County Attorney, for appellants Nelson and Savoie, and a complaint made by Investigator Seery and sworn to before Judge Andrew Garcia, the Justice of the Peace for Precinct One in Lampasas County, for appellant Bane. Appellants have raised no argument on appeal concerning the form of the complaints.

Appellants argue that, after the filing of the complaints, the county clerk was required to issue a summons, which they never received. Code of Criminal Procedure article 15.03(a) provides:

A magistrate may issue a warrant of arrest or a summons:

1. In any case in which he is by law authorized to order verbally the arrest of an offender;

2. When any person shall make oath before the magistrate that another has committed some offense against the laws of the State; and

3. In any case named in this Code where he is specially authorized to issue warrants of arrest.

TEX. CODE CRIM. PROC. ANN. art. 15.03(a) (West 2015). A magistrate may issue a summons "in any case where a[n arrest] warrant may be issued," and the summons "shall be in the same form as the warrant except that it shall summon the defendant to appear before a magistrate at a stated time and place." *Id.* art. 15.03(b); *see also id.* art. 15.02 (West 2015) (providing that arrest warrant is sufficient if it provides necessary substantial information of name of accused, alleged offense, and signature of issuing magistrate); *Gallegos v. State*, 971 S.W.2d 626, 628 (Tex. App.—San Antonio 1998, pet. ref'd) (stating that "[a] summons will, in most cases, serve the same purpose as a capias or arrest warrant, while sparing the defendant embarrassment and saving the State time, effort, and expense" and noting that purpose of capias or arrest warrant "is to secure the presence of a defendant at a proceeding against him").

In this case, however, appellants contend that, although the police had a "general warrant" to enter the property, they were individually arrested without a warrant. An arrest by a peace officer without a warrant is permissible in certain limited circumstances, including situations in which a person commits an offense in a peace officer's presence or within his view. *See* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West 2015). Here, appellants committed the charged offenses within the presence of peace officers, and they were arrested without an arrest warrant. Under

38

these circumstances, a summons was not necessary, and the lack of a summons in this case does not constitute reversible error. *See id.*

## F. Conflict of Interest

Appellants argue that a conflict of interest exists because the trial court, the prosecutor, and the police witnesses all worked for the State of Texas, yet the State is the alleged victim in these cases. Appellants also argue that a conflict of interest exists because both the trial court and the prosecutor are members of the State Bar of Texas.

The parties have a right to a fair trial, and "[o]ne of the most fundamental components of a fair trial is a neutral and detached judge." *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *Guin v. State*, 209 S.W.3d 682, 685 (Tex. App.—Texarkana 2006, no pet.) ("Due process demands an impartial adjudicator to make a ruling based on admissible evidence in a forum with the opportunity to cross-examine and present evidence as allowed."). A trial judge "should not act as an advocate or adversary for any party." *Dockstader*, 233 S.W.3d at 108. Due process requires "a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Celis v. State*, 354 S.W.3d 7, 21 (Tex. App.—Corpus Christi 2011), *aff'd*, 416 S.W.3d 419 (Tex. Crim. App. 2013). A trial judge is constitutionally unacceptable when: (1) the judge has a direct personal, substantial, and pecuniary interest in the

outcome of the case; (2) the judge has been the target of personal abuse or criticism from the party before him; or (3) the judge has the dual role of investigating and adjudicating disputes and complaints. *Id.*

Appellants have pointed to no instance in the record indicating that the trial court failed to act as a "neutral and detached judge" or an "impartial adjudicator" or that the trial court acted "as an advocate or adversary for any party." *See Dockstader*, 233 S.W.3d at 108; *Guin*, 209 S.W.3d at 685. Appellants have also pointed to no evidence indicating that the trial court had "a direct personal, substantial, and pecuniary interest" in the outcome of their case, that the court had "been the target of personal abuse or criticism" from the parties before him, or that the court had "the dual role of investigating and adjudicating disputes and complaints." *See Celis*, 354 S.W.3d at 21. We conclude that appellants have not demonstrated a conflict of interest that violated their due process rights.

## G. *Allowing Appellants to Speak During Trial*

Appellants also argue that the trial court violated their First Amendment rights and prevented them from telling their "side" to the jury by refusing to let them speak during opening statements and closing arguments, by overruling their objections, by

refusing to allow them to cross-examine Investigator Seery, and by refusing to allow Perry to testify.[11]

The record demonstrates, however, that the appellants were given the opportunity to make opening statements and closing arguments. Although the trial court sustained many of the State's objections throughout the trial, the appellants made objections and, on a few occasions, the State reworded its questions or asked additional questions to address the appellants' concerns. Appellants were also given the opportunity to, and did, cross-examine all of the State's witnesses. Although the trial court did not allow Perry to testify, we have already determined that this decision was not erroneous.

## H.    *Newly Discovered Evidence*

Finally, appellants argue that they are entitled to a new trial "in an Article III court of competent jurisdiction" and not a "local court," because "newly-discovered evidence has revealed that local state courts are for profit companies" with ties to "private prisons for profit, who work with judges to incarcerate the innocent and incarcerate juveniles to fill beds." They also argue that they have "discovered that some Texas courts are participants in Court Registration Investment System or

---

[11]    Appellants also argue that the trial court denied them their right to represent themselves. The appellate record, however, contains a copy of the court's docket sheet, which indicates that the trial court approved appellants' requests to represent themselves, and appellants did in fact represent themselves at trial and continue to do so on appeal.

CRIS, which securitizes, monetizes, and trades cases on Wall Street." As support for these arguments, appellants refer us to links to various YouTube videos and CRIS reports contained in the appendices to their briefs.

Code of Criminal Procedure article 40.001 provides that "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2018). For a defendant to be entitled to a new trial on the basis of newly discovered evidence, the defendant must demonstrate:

(1)    the newly discovered evidence was unknown or unavailable to the defendant at the time of trial;

(2)    the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence;

(3)    the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and

(4)    the new evidence is probably true and will probably bring about a different result in a new trial.

*Carsner v. State*, 444 S.W.3d 1, 2–3 (Tex. Crim. App. 2014). In order to preserve for appellate review a complaint that he is entitled to a new trial based on newly discovered evidence, the defendant must raise this complaint in a motion for new trial or at a hearing on a motion for new trial. *See Pitman v. State*, 372 S.W.3d 261, 264 n.2 (Tex. App.—Fort Worth 2012, pet. ref'd); *see also Spiers v. State*, 543 S.W.3d 890, 900 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) ("Appellant

was required to preserve error regarding his complaint about newly discovered evidence.").

Appellants did not move for a new trial in this case. Instead, they raise their argument concerning newly discovered evidence for the first time on appeal. We conclude that because appellants did not raise this complaint in a motion for new trial before the trial court, they have failed to preserve this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a) (providing that, to preserve complaint for appellate review, complaining party must make complaint to trial court by timely request, objection, or motion that states grounds for ruling sought with sufficient specificity to make trial court aware of complaint); *Spiers*, 543 S.W.3d at 900; *Pitman*, 372 S.W.3d at 264 n.2.

## Conclusion

We affirm the judgments of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Lloyd.

Do not publish.  TEX. R. APP. P. 47.2(b).