**Bruno Martinez GONZALEZ, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 12–11–00127–CR.**

Court of Appeals of Texas, Tyler.

March 30, 2012.

Rehearing Overruled July 25, 2012.

---

Albert J. Charanza, Jr., Lufkin, for Appellant.

Dale Paul Summa, Angleton, for The State of Texas.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## *MEMORANDUM OPINION*

BRIAN HOYLE, Justice.

Bruno Martinez Gonzalez appeals his conviction for cruelty to a livestock animal. In two issues, Appellant argues that the evidence is insufficient to support his conviction. We affirm.

### BACKGROUND

In response to citizen complaints, several officers with the Angelina County sheriff's office went to the residence where Appellant lived with his father, Juan Jose Rivera Gonzalez, and several other relatives. There was a gathering of about twenty people at the residence, and many of them left the area as the deputies approached. At the residence, the deputies found two dead roosters and two badly injured roosters along with approximately seventy chickens in cages. The deputies identified an area that they believed to be

a ring for cockfighting. Near that area was a table on which there were at least sixteen small knives of the kind that are commonly attached to a rooster's leg for cockfighting. Also on the table were scissors, tape, vials, and syringes.

There was blood on the ground in the area identified as the cockfighting ring, and the dead roosters had cuts to their body, were caked in blood, and had tape on their legs. The deputies collected two injured chickens and took them to a veterinarian. That evening, the deputies spoke to Appellant and to Appellant's father. Both men maintained that they had not been engaged in fighting chickens. Instead, they said that they had merely been "sparring" the birds. This procedure was described as having two handlers hold the birds in close proximity and then release them. They indicated that they were selling birds, and there was testimony at the trial that these kinds of demonstrations were done to test the suitability of a given chicken for cockfighting.

Appellant and his father were indicted for the felony offense of cruelty to a livestock animal. Specifically, the grand jury alleged that they had caused a chicken to fight with another chicken. Both Appellant and his father pleaded not guilty and waived their right to a jury trial. A bench trial was held for both men at the same time. The trial court found both men guilty and assessed a sentence of confinement for eighteen months for Appellant, with that sentence suspended for a period of five years. This appeal followed.

### SUFFICIENCY OF THE EVIDENCE

In his first and second issues, Appellant argues that the evidence is insufficient to support the verdict. Specifically, he argues that the State did not prove that a fight between two chickens occurred or that it was done in a cruel manner.

### Applicable Law

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S.Ct. 2781, 2786–87, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 917 (Tex.Crim.App.2010) (plurality opinion). Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *see also Rollerson v. State*, 227 S.W.3d 718, 724 (Tex.Crim.App.2007). Under this standard, a reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *See Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Instead, a reviewing court defers to the fact finder's resolution of conflicting evidence unless that resolution is not rational in light of the burden of proof. *See Brooks*, 323 S.W.3d at 899–900. The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim.App.1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

As charged in the indictment, the State's evidence had to show that Appellant knowingly, intentionally, or recklessly caused two livestock animals to fight. *See* Tex. Penal Code Ann. § 42.09(a)(6) (West 2011). The definition of a livestock animal includes "native or nonnative fowl commonly raised under agricultural practices." *See id.* § 42.09(b)(5)(D). It is "an exception to the application" of the law that the conduct engaged in by the actor is generally accepted and otherwise lawful animal husbandry or agriculture practice involving livestock animals. *See id.* § 42.09(f)(2).

### Analysis

■ Appellant's argument focuses on whether "sparring" chickens is the same thing as fighting them and argues that it is not. The problem with this argument is that it is premised on the finder of fact believing or crediting his version of events.

The evidence showed that there were two dead roosters and two badly injured roosters at the house where Appellant lived. There was an array of cockfighting equipment located near what appeared to be a cockfighting ring. This equipment included fighting knives, moleskin, leather straps, wax thread, vitamins, and syringes. A veterinarian testified that the injuries to the birds could have been caused by the fighting blades and that the natural spurs had been removed from the chicken's legs. The veterinarian said that removal of the spurs was not part of ordinary animal husbandry, and there was testimony that this was commonly done to facilitate placement of the knives for fighting. The veterinarian also said there was no reason to tape the legs of the chickens. The chickens were taped only on the left leg, which is where the blade is commonly attached. An expert witness testified it was common to use moleskin, wax thread, and tape to attach a blade to the chicken's leg for a cockfight.

Appellant and his father testified that they had not been engaged in cockfighting. Appellant testified that he had engaged in cockfighting in Louisiana when it was legal there and that the knives were left over from that period of time. He also said, and there was other testimony to this effect from his family members, that the dead birds and injured birds had simply escaped their coops, that their injuries were from the spontaneous and unsupervised fight, and that they had died the day before.

Appellant testified that he had simply been sparring two different birds. The sparring he described was a limited affair where two birds were released to see how they would react to one another. He stated that the birds were separated as soon as they came together and that they wore gloves on their legs to protect one another. This testimony was consistent with the statements made by Appellant and his father to the deputies who arrested them. Specifically, they told the deputies that they had engaged in sparring but did not outfit the chickens with knives for fighting.

There were reasons to doubt Appellant's version of events. First, it is difficult to understand why the knives and other paraphernalia would be present if Appellant and his father were not engaged in fighting the chickens. Appellant claimed that leather gloves were placed on the chickens to prevent injuries. Appellant's brother brought some gloves to the trial, but the deputies did not locate any gloves the day they went to the house. Furthermore, there was testimony that the dead roosters were still warm. This leads to the conclusion that they died shortly before the deputies arrived and not, as Appellant and his father stated, much earlier that day or the day before. Finally, the veterinarian testified that the injuries to the two dead roosters, specifically punctures and lacerations,

were caused by sharp objects, possibly the knives found at the scene. He testified that when chickens fight naturally, they strike one another with their wings, and that their wings do not have any sharp edges. He did allow that a beak strike, which is another thing chickens do when they fight, can cause lacerations. While the dead roosters had blood on their faces, the veterinarian described them as "laden with blood" and testified that they had lacerations and cuts around their feet and knees and underneath their wings. He also identified "a lot of punctures and lacerations" to their "breast area."

■■■■ With respect to both direct and circumstantial evidence, it is the responsibility of the finder of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim. App.2010). When reviewing the evidence for legal sufficiency, our role is to guard "against the rare occurrence where the factfinder does not act rationally." *Id.* (citing *Laster v. State*, 275 S.W.3d 512, 518 (Tex.Crim.App.2009)).

Appellant's argument is that there is an "important factual distinction between fighting and sparring" and that the law does not "prohibit[ ] sparring." Essentially, he concedes that fighting with a knife would be criminalized by Section 42.09, but he argues that sparring without a knife is not. Combined with the conclusion that no witness testified that Appellant fought any chickens armed with a knife, Appellant argues that the conviction cannot stand. We disagree.[1]

Efforts to curb cockfighting have had a long history in Texas. The court's opinion in *Mejia v. State*, 681 S.W.2d 88, 91 (Tex. App.-Houston [14th Dist.] 1984, pet. ref'd), presents a chronological timeline of the relevant statutes starting in 1925. The 1925 statute, which was repealed in 1974, specifically outlawed a "cock fight" or other fights between "any animals or fowls." *Id.* at 89. Over time, the wording of the statute changed, but the law has consistently prohibited causing animals to fight one another. The term "cock fight" was present in the 1925 statute, but is not found in Section 42.09 or its immediate predecessor statute. *Id.* at 90. However, the pendulum has now swung from a more general condemnation of the practice to a more specific one. In a statute that took effect after this prosecution, the legislature has once again outlawed "cockfighting" by name. *See* TEX. PENAL CODE ANN. § 42.105 (West Supp.2011). The changes to the statute over the years reflect a commonly seen back and forth between more specific statutes that criminalize specific conduct and more general statutes designed to simplify the penal code. *See Mejia*, 681 S.W.2d at 89–90 (discussing historical revisions to and consolidations of statutes protecting animals).

It is accurate to say that the statute does not define the term "fight." How broadly that term should be construed is an interesting question, but it is one we need not determine here. After reviewing all of the facts, we hold that a rational finder of fact could conclude that Appellant caused chickens to fight while wearing knives. Appellant admitted to sparring the chickens. In an area of the yard,

---

1. Appellant argues that sparring is not cruel and that the dead roosters were disposed of in a reasonable manner. We note that the offense of cruelty to animals can be committed in a number of ways, but that cruelty is specifically an element of the offense only when it is alleged that the person "transports or confines a livestock animal in a cruel and unusual manner." *See* TEX. PENAL CODE ANN. § 42.09(a)(4). Appellant was not charged under this subsection.

deputies found recently killed chickens that had injuries which were consistent with knife wounds and an array of chicken fighting paraphernalia. A large number of people were present and there was blood on the dead chickens, on the injured chickens, and on the ground in an area that resembled a chicken fighting ring.

The finder of fact was not bound by Appellant's statement that he did nothing more than "spar" the animals[2] or his various explanations for the implements found. We reach the same conclusion with respect to Appellant's brief argument that the State did not show that the sparring of chickens is not a generally accepted and otherwise lawful form of conduct occurring solely for animal husbandry or agricultural practices involving livestock animals. *See* TEX. PENAL CODE ANN. § 42.09(f)(2). This argument rests on the premise that Appellant engaged only in the conduct he admitted, that is sparring the animals. For the reasons we stated, the finder of fact could have rationally determined that Appellant engaged in the fighting of chickens armed with blades and that such conduct is not a generally accepted animal husbandry or agriculture practice. We overrule Appellant's first and second issues.

#### DISPOSITION

Having overruled Appellant's first and second issues, we *affirm* the judgment of the trial court.

---

2. After finding Appellant guilty of the offense, the trial court judge stated that he made no distinction between sparring and fighting, but said that it "would be very generous if I thought it was just sparring." The judge went on to say that he was "not saying that [he found] it [to be] just sparring." Accordingly, while the trial court judge was of the opinion that sparring was fighting, the verdict did not rest on that conclusion.