

## NUMBER 13-20-00200-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

STEVEN ELMER HINDS,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

### On appeal from the County Court
### of Karnes County, Texas.

## OPINION

### Before Justices Longoria, Hinojosa, and Tijerina
### Opinion by Justice Hinojosa

Appellant Steven Elmer Hinds was convicted of cockfighting, a Class A misdemeanor, following a jury trial.[1] *See* TEX. PENAL CODE ANN. § 42.105. The trial court

---

[1] This appeal was transferred to us from the Fourth Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN.§ 73.001.

imposed a suspended sentence of twelve months' confinement in the county jail, and it placed Hinds on community supervision for one year. In ten issues, Hinds argues that the cockfighting statute is facially unconstitutional. We affirm.

## I. BACKGROUND

Hinds was charged by information with knowingly owning or training a cock[2] with the intent that the cock be used in an exhibition of cockfighting, and with manufacturing, buying, selling, bartering, exchanging, possessing, advertising, or otherwise offering a gaff,[3] slasher[4] or any other sharp implement designed for attachment to a cock with the intent that the implement be used in cockfighting. *See id*. § 42.105(b)(4), (5).

Hinds pleaded not guilty and later filed five motions to dismiss alleging that § 42.105 of the penal code violated various provisions of the United States and Texas constitutions. The trial court denied the motions, and the case proceeded to a jury trial. A jury found Hinds guilty, and he now appeals.

## II. BRIEFING WAIVER

In ten issues, Hinds argues that the cockfighting statute violates the following provisions of the United States Constitution: (1) First Amendment; (2) Fourth Amendment; (3) Fifth Amendment; (4) Article VI, Paragraph II; (5) Sixth Amendment; (6) Eighth Amendment; (7) Ninth Amendment; (8) Tenth Amendment; (9) Fourteenth Amendment;

---

[2] The Texas Penal Code defines a "cock" as "the male of any type of domestic fowl." TEX. PENAL CODE ANN. § 42.105 (a)(2).

[3] A "gaff" is "an artificial steel spur designed to attach to the leg of a cock to replace or supplement the cock's natural spur." *Id*. § 42.105(a)(4).

[4] A "slasher" is "a steel weapon resembling a curved knife blade designed to attach to the foot of a cock." *Id*. § 42.105(a)(5).

and (10) Article V. *See* U.S. CONST. amends. I, IV–VI, VIII-X, XIV; arts. V, VI.

Hinds has waived issues two and four through ten due to inadequate briefing. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Apart from general references to the provisions of the United States Constitution, Hinds provides no analysis with citation to appropriate legal authority explaining how § 42.105 violates these constitutional provisions. Hinds's conclusory assertions that the statute is unconstitutional are inadequate; therefore, he has waived these issues. *See Morehead v. State*, 807 S.W.2d 577, 579 n.1 (Tex. Crim. App. 1991); *see also Nelson v. State*, No. 01-17-00746-CR, 2018 WL 6495171, at *8 (Tex. App.—Houston [1st Dist.] Dec. 11, 2018, pet. ref'd) (mem. op., not designated for publication) (concluding that appellants waived their constitutional challenge to § 42.105 of the penal code where they cited no supporting authority and provided no analysis). We overrule Hinds's second and fourth through tenth issues. We will proceed to address Hinds's first and third issues which are facial challenges to the constitutionality of § 42.105.

### III.  CONSTITUTIONAL CHALLENGE

### A.  Standard of Review

A facial challenge to the constitutionality of the statute attacks the statute itself rather than the statute's application to the defendant. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015). Whether a statute is facially constitutional is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). We begin our review with the presumption that the statute is valid and that the legislature has

not acted unreasonably or arbitrarily. *Id*. at 14–15. "The burden rests upon the individual who challenges a statute to establish its unconstitutionality." *Peraza*, 467 S.W.3d at 514 (citing *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978)). To prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances. *Salinas v. State*, 464 S.W.3d 363, 367 (Tex. Crim. App. 2015); *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). We consider the statute only as it is written, rather than how it operates in practice. *Salinas*, 464 S.W.3d at 367.

## B.    Cockfighting Statute

"Efforts to curb cockfighting have had a long history in Texas." *Gonzalez v. State*, 376 S.W.3d 141, 145 (Tex. App.—Tyler 2012, no pet.). In 1925, the Texas Legislature specifically outlawed a "cock fight" or other fights between "any animals or fowls." *Id.* "Over time, the wording of the statute changed, but the law has consistently prohibited causing animals to fight one another." *Id*. Presently, the legislature defines cockfighting as "any situation in which one cock attacks or fights with another cock." TEX. PENAL. CODE. ANN. § 42.105(a)(3). Cockfighting is now illegal in all fifty states and in the District of Columbia. *United States v. Gibert*, 677 F.3d 613, 622 (4th Cir. 2012).

As applicable here, § 42.105 provides that it is a criminal offense if a person knowingly:

(4)    owns or trains a cock with the intent that the cock be used in an exhibition of cockfighting; [or]

(5)    manufactures, buys, sells, barters, exchanges, possesses, advertises, or otherwise offers a gaff, slasher, or other sharp implement designed for attachment to a cock with the intent that the

4

implement be used in cockfighting[.]

TEX. PENAL CODE ANN. § 42.105(b)(4), (5).

## C.   Establishment Clause

In his first issue, Hinds argues that § 42.105 violates the Establishment Clause of the First Amendment because it constitutes "government establishment of respect of the Pagan Religion[.]" *See* U.S. CONST. amend. I. Hinds contends that paganism is a "nature worshiping religion" and that "animal rights laws are a clandestinely designed effort to institute laws respecting the establishment of the Pagan religion and animal worship."

The Establishment Clause provides, "Congress shall make no law respecting an establishment of religion[.]" *Id*. This prohibition extends to state legislatures via the Fourteenth Amendment. *Id*. at amend. XIV; *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 301 (2000). An Establishment Clause analysis requires examination of three criteria: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion." *Flores v. State*, 245 S.W.3d 432, 438 (Tex. Crim. App. 2008) (quoting *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971)). Mere consistency between a statute and religious tenets does not render a statute unconstitutional. *Id*. Otherwise, no penal provision would pass constitutional muster. *Id*.

Hinds has not met his burden in demonstrating that § 42.105 violates the Establishment Clause. Hinds cites no facts indicating that the Legislature's purpose in enacting the statute was anything but secular in nature. Section 42.105 is found within

Title IX of the penal code, which is titled "Offenses Against Public Order and Decency." Like other Title IX offenses, § 42.105 has a clear secular purpose of providing for the humane treatment of animals. The primary effect of the statute is penal in nature. The mere fact that § 42.105 might be consistent with the tenets of a particular faith does not render the statute unconstitutional. *See Holberg v. State*, 38 S.W.3d 137, 140 (Tex. Crim. App. 2000). On its face, § 42.105 neither advances nor inhibits a particular religion. Further, the statute contains no provisions that would lead to excessive government entanglement in religion. We conclude as a matter of law that § 42.105 does not violate the Establishment Clause. *See Ex parte Lo*, 424 S.W.3d at 14; *cf. Hastey v. Bush*, 82 Fed. Appx. 370, 372 (5th Cir. 2003) (holding that the plaintiff failed to state an Establishment Clause claim because § 42.09 of the penal code, which criminalizes cruelty to livestock animals, has a secular purpose, does not advance or inhibit religious doctrine, and contains no provisions that would cause excessive government entanglement in religion). We overrule Hinds's first issue.

## C.    Takings Clause

In his third issue, Hinds argues that § 42.105 of the penal code violates the Takings Clause of the Fifth Amendment. Hinds maintains that the statute constitutes "a ban on the use of property for the very purpose one owns the property", thereby "depriv[ing] the owner of all 'economically viable use' of the property[.]"

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. CONST. amend. V. The Clause is made applicable to the State through the Fourteenth Amendment. *Id*. at amend

6

XIV. The Takings Clause prohibits both physical takings and regulatory takings. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537–38 (2005).

Here, Hinds alleges that § 42.105 of the penal code constitutes a regulatory taking, which occurs when the government imposes restrictions that either deny a person all economically viable use of his property or unreasonably interferes with the person's right to use and enjoy the property. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 935 (Tex. 1998); *City of Houston v. Commons at Lake Hous., Ltd.*, 587 S.W.3d 494, 499 (Tex. App.—Houston [14th Dist.] 2019, no pet.). "[D]etermining whether the government has unreasonably interfered with a landowner's right to use and enjoy property requires a consideration of two factors: the economic impact of the regulation and the extent to which the regulation interferes with distinct investment-backed expectations." *Mayhew*, 964 S.W.2d at 935.

"[G]overnment regulation—by definition—involves the adjustment of rights for the public good." *Andrus v. Allard*, 444 U.S. 51, 65 (1979). Such regulations will often curtail the potential use of private property for economic purposes. *Id*. But to require compensation in all of these scenarios would require the government to "regulate by purchase." *Id*. Therefore, the Takings Clause preserves the government's police power, subject only to the dictates of justice and fairness. *Id*. In other words, some property rights must yield to a government's legitimate exercise of its police powers. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027 (1992). Furthermore, "all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community. . . ." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491

7

(1987) (quoting *Mugler v. Kansas*, 123 U.S. 623, 665 (1887)). The Takings Clause does "not transform that principle to one that requires compensation whenever the State asserts its power to enforce [this obligation]." *Id*. "And in the case of personal property, by reason of the [government's] traditionally high degree of control over commercial dealings, [a property owner] ought to be aware of the possibility that new regulation might even render his property economically worthless[.]" *Lucas*, 505 U.S. at 1027–28. This rings even more true as it relates to the ownership of animals which pose unique threats to people and may be subject to onerous government regulation. *Cf. Nicchia v. New York*, 254 U.S. 228, 230 (1920) ("Property in dogs is of an imperfect or qualified nature and they may be subjected to peculiar and drastic police regulations by the state without depriving their owners of any federal right.").

In *Andrus*, the United States Supreme Court explained that a regulation can severely undermine the economic value of personal property and still not rise to the level of a taking. 444 U.S. at 66. In that case, the federal government banned sales of all items containing parts of an eagle. *Id*. at 56. As a result, individuals who had lawfully acquired artifacts containing eagle parts were unable to sell the artifacts. *Id*. at 62–63. While this was a "significant restriction," the Court held that this "destruction of one 'strand' of the bundle" of property rights did not constitute a taking. *Id*. at 65–66. Rather, the substantial state interest in preserving eagles justified the regulation. *Id*. at 66–68.

Relying on *Andrus*, the Oklahoma Supreme Court rejected a Takings Clause challenge to that state's cockfighting statute:

> Here we have a regulation of personal property that prohibits one use thereof. Respondents or others similarly situated retain the rights to possess,

8

sell, trade, donate, devise or use their gamecocks or game fowl, or any property related thereto, in any lawful manner or for any lawful purpose. Although their ability or opportunity to earn future profit from fighting such birds or raising or selling them for fighting may be eliminated, that is a "slender reed" upon which to base a takings claim, given their retention of full rights to use or sell their birds for other purposes. . . . [G]iven the above jurisprudence and in light of the application of judgment, logic and fairness, we do not believe the prohibition at issue here can rightfully be considered a taking or damaging of property for public use for which compensation is due. Instead, the Act under review represents a non-compensable and valid exercise of the police power to outlaw one use of property which amounts to animal cruelty.

*Edmonson v. Pearce*, 91 P.3d 605, 619–20 (Okla. 2004) (footnotes omitted).

We find *Pearce* persuasive and adopt its reasoning. Section 42.105 affects only one very narrow strand of the bundle of property rights. An owner of domestic fowl may still own, possess, breed, and sell their property. Further, as many other jurisdictions have concluded, § 42.105 is a proper subject for the exercise of the State's police power in that its purpose is to discourage and prohibit the cruel practice of animal fighting.[5] *See id*. at 620; *State v. Young*, 695 S.W.2d 882, 886 (Mo. 1985); *State v. Tabor*, 678 S.W.2d 45, 48 (Tenn. 1984); *Peck v. Dunn*, 574 P.2d 367, 369 (Utah 1978).

Finally, Texas has outlawed cockfighting in some manner for almost one hundred years. Even if § 42.105 denies an economically viable use of domestic fowl, it is a long-known restriction that would not interfere with a property owner's investment-backed expectations. *See Mayhew*, 964 S.W.2d at 936 (explaining that existing property regulations at the time property is purchased should be considered in determining

---

[5] In the most recent amendment to the statute, the Legislature extended the scope of § 42.105, which was previously limited to persons "engaging cocks in a fight", by criminalizing "conduct relating to cockfighting . . . ." HOUSE COMM. ON CRIM. JURIS., BILL ANALYSIS, Tex. H.B. 043, 82nd Leg., R.S. (2011). The House's Bill Analysis noted that cockfighting "is still rampant through the state and is often accompanied by gambling, alcohol, drugs, and firearms." *Id*.

whether a regulation interferes with distinct investment-backed expectations as required to show a regulatory taking).

For the foregoing reasons, we conclude as a matter of law that § 42.105 does not violate the Takings Clause. *See Ex parte Lo*, 424 S.W.3d at 14. We overrule Hinds's third issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
24th day of June, 2021.

10